IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

————————

No. 16-0290

————————

FILED

**November 17, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,
Plaintiff Below, Petitioner

v.

TARA CLENDENEN, JAMES CLENDENEN,
MARY A. NEESE, Administratrix and Personal Representative
of the Estate of Skylar Neese, deceased,
DAVID NEESE, and MARY A. NEESE, individually,
Defendants Below, Respondents

AND

ERIE INSURANCE PROPERTY AND CASUALTY COMPANY,
Plaintiff Below, Petitioner,

v.

MARY A. NEESE, Individually and as Administratrix of the Estate of Skylar Neese,
DAVID NEESE, TARA CLENDENEN, and PATRICIA SHOAF,
Defendants Below, Respondents.

————————————————————————————————————————

From the United States District Court for the Northern District of West Virginia
The Honorable Irene M. Keeley, Judge
Civil Action Nos. 1:14-cv-155 and 1:14-cv-172

CERTFIED QUESTIONS ANSWERED

————————————————————————————————————————

Submitted: September 21, 2016
Filed: November 17, 2016

Dwayne E. Cyrus, Esq.
Shuman, McCuskey & Slicer, PLLC
Charleston, West Virginia
Margaret L. Miner, Esq.
J. Robert Russell, Esq.
Shuman, McCuskey & Slicer, PLLC
Morgantown, West Virginia
Counsel for Petitioner,
American National Property and Casualty
Company

Amy M. Smith, Esq.
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Laurie C. Barbe, Esq.
Steptoe & Johnson, PLLC
Morgantown, West Virginia
Counsel for Petitioner,
Erie Insurance Property & Casualty
Company

Jill Cranston Rice, Esq.
Morgantown, West Virginia
Andrew T. Kirkner, Esq.
Washington, DC
Counsel for Amicus Curiae,
West Virginia Insurance Federation

Michael Benninger, Esq.
Benninger Law, PLLC
Morgantown, West Virginia
Counsel for Respondents,
Tara and James Clendenen and Sheila Eddy

William L. Frame, Esq.
Wilson Frame & Metheney, PLLC
Morgantown, West Virginia
Counsel for Respondents,
Mary and David Neese

Paul W. Gwaltney, Jr., Esq.
Trevor K. Taylor, Esq.
Taylor Law Office
Morgantown, West Virginia
Counsel for Respondent, Patricia Shoaf

JUSTICE BENJAMIN delivered the Opinion of the Court.

ii

SYLLABUS BY THE COURT

1.     "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co*., 203 W.Va. 27, 506 S.E.2d 64 (1998).

2.     "When reviewing a question certified from a federal district or appellate court, this Court will give the question plenary review, and may consider any portions of the federal court's record that are relevant to the question of law to be answered." Syl. Pt 2, *Valentine v. Sugar Rock, Inc*., 234 W. Va. 526, 766 S.E.2d 785 (2014).

3.     "'Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated.' Syl. pt. 5, *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fidelity & Guar. Co*., 202 W.Va. 308, 504 S.E.2d 135 (1998)." Syl. Pt. 8, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Miller*, 228 W. Va. 739, 724 S.E.2d 343 (2012).

4.     "Language in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc*., 176 W. Va. 430, 345 S.E.2d 33 (1986).

5. "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 153 W. Va. 813, 172 S.E.2d 714 (1970).

6. "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987).

7. "Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. Pt. 1, *Prete v. Merch. Prop. Ins. Co.*, 159, W. Va. 508, 223 S.E.2d 441 (1976).

Benjamin, Justice:

This Court is presented with the following two certified questions from the United States District Court for the Northern District of West Virginia:

1. Applying West Virginia public policy and rules of contract construction, do the unambiguous exclusions in American National's policy for bodily injury or property damage "which is expected or intended by any insured even if the actual injury or damage is different than expected or intended," and "arising out of any criminal act committed by or at the direction of any insured," and the unambiguous exclusion in Erie's policy for "bodily injury, property damage, or personal injury expected or intended by 'anyone we protect' . . . ," preclude liability coverage for insureds who did not commit any intentional or criminal act?

2. If so, do the unambiguous severability clauses in the insurance policies, which state that the insurance applies separately to each insured, prevail over the exclusions and require the insurers to apply the exclusions separately to each insured, despite the intentional and criminal actions of co-insureds?

We have considered the parties' briefs, oral arguments, and the record before us.[1] For the reasons expressed more thoroughly below, we answer the first certified question in the affirmative and the second certified question in the negative.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Teenagers Sheila Eddy, Rachel Shoaf, and Skylar Neese had been friends for years. In the spring and summer of 2012, Sheila and Rachel wanted to terminate their

---

[1] We wish to acknowledge the Amicus Curiae brief filed by the West Virginia Insurance Federation in support of the Petitioners.

friendship with Skylar but were afraid to do so because they believed Skylar would disclose some embarrassing information she knew about them. So, Sheila and Rachel plotted to kill Skylar instead. On the night of July 5, 2012, Sheila and Rachel picked Skylar up in a car belonging to Sheila's mother, Tara Clendenen. Sheila and Rachel drove Skylar to a remote location outside of Brave, Pennsylvania, where they stabbed Skylar to death and hid her body. Skylar's body was not discovered until January 2013, more than six months after her disappearance. Sheila and Rachel eventually confessed to, and were convicted of, the murder. Sheila pleaded guilty to first degree murder and was sentenced to life in prison with mercy. Rachel pleaded guilty to second degree murder and was sentenced to thirty years in prison.

### A. The Underlying State Court Action

In 2014, Skylar's parents, Respondents David and Mary Neese, filed a wrongful death civil action in the Circuit Court of Monongalia County, West Virginia, against Sheila Eddy, Tara Clendenen, Rachel Shoaf, and Patricia Shoaf, Rachel's mother, to recover damages in connection with Skylar's death.[2] At the time of Skylar's murder, Sheila lived with Mrs. Clendenen and Rachel lived with Mrs. Shoaf. The Neeses asserted, among other things, that Mrs. Clendenen and Mrs. Shoaf had been negligent in

---

[2] James Clendenen, who is Tara Clendenen's husband and Sheila Eddy's step-father, was not sued, although he is the named insured on the American National Property and Casualty (hereinafter "ANPAC") policy at issue.

their supervision of Sheila and Rachel in numerous respects, such as failing to monitor their activities, behavior, and whereabouts, and in Mrs. Clendenen's case, in entrusting to Sheila the car the girls used to drive Skylar to Pennsylvania on the night of her murder.[3] Notably, the Complaint does not allege that Mrs. Clendenen or Mrs. Shoaf were part of the plan or had any reason to know of the same.

### B. The ANPAC Policy

In July 2012, Tara Clendenen, who was residing with her husband, James Clendenen, was an insured under a homeowner's insurance policy issued by ANPAC to James Clendenen. Sheila Eddy, who pleaded guilty to first degree murder in the death of Skylar Neese, was also an insured under the ANPAC homeowner's policy issued to James Clendenen, as she was a minor in the care of Tara Clendenen during that time period. Mrs. Clendenen requested that ANPAC provide defense and indemnification with respect to the claims asserted in the Complaint. ANPAC agreed to provide a defense to Mrs. Clendenen in the Neese action pursuant to a reservation of rights.

---

[3] In Count I of the Complaint, "Murder," the Neeses seek compensatory and punitive damages. In Count II, "Negligence/Reckless Concealment," the Neeses seek damages for concealing Skylar's body and providing false and misleading information regarding her disappearance. In Count III, "Negligent Supervision/Entrustment," they allege that Mrs. Clendenen and Mrs. Shoaf, as parents, guardians, and custodians of Sheila Eddy and Rachel Shoaf, "were negligent and careless in their supervision and guidance of their daughters."

The insurance policy at issue, ANPAC Homeowner's Policy number 47-H-761-55L-3, provides in pertinent part, as follows:

**SECTION II - LIABILITY COVERAGES**

**Coverage E - Personal Liability**

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, we will:

a. pay up to our **limit of liability** for the damages for which the **insured** is legally liable;. . .

The policy provides certain conditions and limitations under the liability section of the policy as follows:

**SECTION II - CONDITIONS**

a. **Limit of Liability**. Regardless of the number of **insureds**, claims made or persons injured, our total liability under Coverage E for all damages resulting from any one **occurrence** shall not exceed the **limit of liability** for Coverage E stated in the **Declarations.**...

b. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our **limit of liability** for any one **occurrence**.

The homeowner's policy also states that the coverage provided by Coverages E and F is subject to the following exclusions, among others:

**SECTION II EXCLUSIONS**

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply **to bodily injury** or **property damage**:

4

a. Which is expected or intended by **any insured** even if the actual injury or damage is different than expected or intended;

\*\*\*

p. Arising out of any criminal act committed by or at the direction of **any insured**; . . . .

## C. The Erie Policy

At the time of Skylar's murder, Mrs. Shoaf and her daughter, Rachel, were insured under an Erie Ultracover HomeProtector Insurance Policy No. Q55-7600737 issued to Mrs. Shoaf by Petitioner Erie Insurance Property and Casualty Company (hereinafter "Erie").[4] The Erie Homeowners Policy includes the following insuring agreement for personal injury liability coverage:

> **We** will pay all sums up to the amount shown on the **Declarations** which **anyone we protect** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** caused by an **occurrence** during the policy period. **We** will pay for only **bodily injury** or **property damage** covered by this policy.

"**Anyone we protect**" is defined, in relevant part, as follows: "anyone we protect means you and the following members of your household: 1. relatives and wards; 2. other persons in the care of anyone we protect. . . ."

---

[4] Erie also provided automobile coverage to both Mrs. Clendenen for her 2006 Toyota Camry and to Mrs. Shoaf for her automobile. The parties have agreed that the Erie automobile policies are not at issue because Skylar's death did not arise out of the operation of a motor vehicle.

5

The Erie Homeowners Policy also contains certain exclusions from the personal injury liability coverage, including the following:

> **We** do not cover under *Bodily Injury Liability Coverage, Property Damage Liability Coverage, Personal Injury Liability Coverage, and Medical Payments To Others Coverage*:
>
> 1. **Bodily injury**, **property damage** or **personal injury** expected or intended by **anyone we protect** even if:
>
> > a. the degree, kind or quality of the injury or damage is different than what was expected or intended; or
> >
> > b. a different person, entity, real or personal property sustained the injury or damage than was expected or intended.
>
> . . . .
>
> **We** do not cover under *Bodily Injury Liability Coverage, Property Damage Liability Coverage, or Personal Injury Liability Coverage*:
>
> . . . .
>
> 9. **Personal injury** arising out of willful violation of a law or ordinance by **anyone we protect**.

Like the ANPAC Homeowners Policy, the Erie Homeowners Policy also contains severability of insurance language. The Limits of Protection provision in Erie's policy expressly states in pertinent part:

> This insurance applies separately **to anyone we protect**. Regardless of the number of people **we** protect, claims made or persons injured, **our** total liability under *Personal Liability Coverage* for damages resulting from one **occurrence**, offense, claim or suit will not exceed the amount shown on the **Declarations** for *Personal Liability Coverage*. All **bodily injury, property damage** and **personal injury** resulting from one accident or from

6

continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**, offense, claim or suit.

## D. The Federal Declaratory Judgment Action

Although not a party to the state court action, ANPAC and Erie filed declaratory judgment actions in the United States District Court for the Northern District of West Virginia seeking a determination that the homeowner's insurance policies do not provide coverage for the claims being asserted in the Complaint and that the insurers have no duty to defend or indemnify Sheila Eddy, Tara Clendenen, Patricia Shoaf or Rachel Shoaf in that case.[5] The actions were consolidated by the federal court.

ANPAC and Erie filed motions for summary judgment in the consolidated declaratory judgment action, arguing that no coverage exists under their homeowner's policies because there was no "occurrence" within the meaning of the policy and, even if there was an occurrence, the policy exclusions for intentional and criminal acts unambiguously exclude coverage. The Neeses filed a combined cross-motion for summary judgment and opposition to ANPAC's and Erie's motions arguing that Mrs. Clendenen and Mrs. Shoaf are entitled to coverage under the homeowner's policies for

---

[5] In its declaratory judgment action, ANPAC also sought a ruling as to coverage under a separate automobile policy issued by ANPAC to James Clendenen but not covering the automobile operated by Sheila Eddy on the night in question. Erie, which issued a homeowner's insurance policy insuring Patricia and Rachel Shoaf and automobile policies insuring various automobiles owned by the Shoafs and Clendenens, filed its own declaratory judgment action.

the following reasons: 1) Skylar's death was an accident, and thus, an occurrence from the viewpoint of Mrs. Clendenen and Mrs. Shoaf; and 2) the criminal and intentional act exclusions in the homeowner's policies conflict with the severability clauses, thereby creating an ambiguity that must be resolved in favor of the defendants.[6] They did not contend that the exclusions and severability clauses themselves are ambiguous. Rather, they argued that ambiguity results when one applies the severability clause to the exclusions.

Patricia Shoaf filed a cross-motion for summary judgment and brief in response against Erie arguing that she does not fall within the exclusions in the policy, that the severability clause protects her from exclusion, and that Erie owes her coverage under the personal injury portion of her policy for various torts allegedly pleaded in the state court case. While the Neeses and Mrs. Clendenen conceded that Sheila and Rachel were not entitled to defense and indemnification because of their criminal actions, Mrs. Shoaf argued that she believed coverage existed for the claims against her and Rachel.

On March 1, 2016, the court entered an order ruling on the parties' respective motions and made the following conclusions: (1) that pursuant to *Columbia Casualty Company v. Westfield Insurance Company*, 217 W. Va. 250, 617 S.E.2d 797

---

[6] Tara Clendenen joined the Neeses' cross-motion for summary judgment and brief in response. Eddy did not file a response or cross-motion.

8

(2005), the death of Skylar Neese was an "occurrence" from the perspective of Tara Clendenen and Patricia Shoaf under the ANPAC and Erie policies, (2) that under the respective exclusions, Sheila Eddy and Rachel Shoaf were not entitled to defense and indemnification for their intentional, criminal acts, (3) that as conceded by the parties, the respondents are not entitled to coverage under any of the automobile insurance policies, (4) that neither Patricia nor Rachel Shoaf are entitled to defense and indemnification under the personal injury portion of the Erie homeowner's policy, and (5) that the "language of the exclusions and severability clauses in the relevant homeowner's policies is not ambiguous." It nevertheless found that "[i]t is unclear how, under its public policy and rules of contract construction, West Virginia would prioritize the exclusions and severability clauses in the [ANPAC] and Erie homeowner's policies to determine whether coverage is available to Mrs. Shoaf and Mrs. Clendenen in the state court action." Accordingly, the federal court decided to certify questions to this Honorable Court pursuant to the Uniform Certification of Questions of Law Act, W. Va. Code § 51-1A-1, *et seq.*

## II. STANDARD OF REVIEW

When considering an order certifying questions from a federal court, we give the court's assessment of the questions a plenary review. "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co*., 203 W.Va. 27,

9

506 S.E.2d 64 (1998). "When reviewing a question certified from a federal district or appellate court, this Court will give the question plenary review, and may consider any portions of the federal court's record that are relevant to the question of law to be answered." Syl. Pt 2, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014).

## III.   ANALYSIS

As stated above, the district court found that like the majority of courts to have considered this issue, and based upon the rules of construction, the intentional and criminal acts exclusions in both homeowner's policies are unambiguous. *See Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 751 (Colo. 1990) (finding exclusion for intentional acts unambiguous). The district court likewise found that the severability clauses in both policies are unambiguous. *See EMCASCO Ins. Co. v. Diedrich*, 394 F.3d 1091, 1097 (8th Cir. 2005) ("[T]he definition of an 'insured' and the intentional acts exclusion in the [homeowner's policy] is unambiguous. The severability clause does not create any ambiguity.").

The district court further concluded that although the parties disagreed as to whether an ambiguity results when one applies the severability clause to the exclusions, this fact did not render the policies ambiguous. *See Am. States Ins. Co. v. Surbaugh*, 231 W. Va. 288, 295, 745 S.E.2d 179, 186 (2013). However, with respect to the issue of which clause (the intentional/criminal acts exclusions or the severability clause) should

10

prevail over the other, the district court concluded that, due to it being a matter of public policy, the issue should be considered by this Court by way of a certified question. Accordingly, the district court certified two questions to this Court: (1) Whether, under West Virginia public policy and the rules of contract construction, the exclusions in the policies should preclude Mrs. Clendenen and Mrs. Shoaf, who admittedly did not murder Skylar, from obtaining coverage based on the actions of their daughters, who were also insured under the policies; and, (2) whether the severability clauses in the policies require ANPAC and Erie to apply the exclusions separately against each insured, based upon that insured's own actions.

### A. First Certified Question

The first certified question presented by the district court specifically asks whether, applying West Virginia public policy and rules of contract construction, do the unambiguous exclusions in [ANPAC'S] policy for bodily injury or property damage "which is expected or intended by any insured even if the actual injury or damage is different than expected or intended," and "arising out of any criminal act committed by or at the direction of any insured," and the unambiguous exclusion in Erie's policy for "bodily injury, property damage, or personal injury expected or intended by 'anyone we protect' . . . ," preclude liability coverage for insureds who did not commit any intentional or criminal act?

11

With respect to this issue, ANPAC and Erie contend that even though Skylar's death was an "occurrence" from the standpoint of Mrs. Clendenen and Mrs. Shoaf, coverage should nevertheless be denied under exclusions for the intentional or criminal acts of "any insured" or "anyone we protect" because it is appropriate to view those exclusions from the perspective of their co-insureds, Sheila and Rachel, who, unlike Mrs. Clendenen and Mrs. Shoaf, intended to bring about Skylar's death. They argue that because the claims for wrongful death damages in the Complaint are all inextricably tied to the intentional criminal conduct of Sheila Eddy and Rachel Shoaf, insureds under their respective homeowners policies, and because public policy favors application of unambiguous intentional/criminal acts exclusions as written, the first certified question must be answered in the affirmative. They also assert that the majority of jurisdictions to consider the question have applied similar exclusions to preclude coverage to an insured based on the intentional or criminal acts of a co-insured.[7]

Conversely, the Neeses argue that the insurers' position is inconsistent with the rule adopted by this Court in *Columbia Casualty*, given our recognition in that case

[7] Additionally, in support of the Petitioners' position, the West Virginia Insurance Federation argues that the majority rule in America requires that coverage be excluded where the language of a policy excludes coverage for the intentional acts of "any" insured and an insured commits an intentional or expected act. *See American Family Mut. Ins. Co. v. White*, 65 P.3d 449, 456 (Ariz. Ct App. 2003) ("Most courts that have construed the phrase 'any insured' in an exclusion have found that it bars coverage for any claim attributable to the excludable acts of any insured, even if the policy contains a severability clause. We join that majority."); *see also Chacon*, 788 P.2d 748.

12

that the purpose of liability policies is to insure against one's own negligence, rather than the intentional acts of another. 217 W. Va. at 254, 617 S.E.2d at 801. Additionally, they contend that Mrs. Clendenen and Mrs. Shoaf had a reasonable expectation that they would be covered under the ANPAC and Erie homeowners policies for their own negligent acts. *See Minkler v. Safeco Ins. Co. of Am.*, 232 P.3d 612, 624 (Cal. 2010) (mother had "no reason to expect that [her son's] residence in her home, and his consequent status as an additional insured on her homeowners policies, would narrow her own coverage . . . against claims arising from his intentional acts.") They assert that even if this Court finds that the exclusions are not against West Virginia public policy or the rules of construction, the use of the "any person" or "anyone we protect" language in the exclusions creates an ambiguity as to whose conduct is at issue in deciding whether to apply the exclusions, especially in light of the severability provisions included in each of the policies. They maintain that under the rules of contract construction, "[w]here the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. Pt. 8, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Miller*, 228 W. Va. 739, 724 S.E.2d 343 (2012).

Mrs. Shoaf argues that with regard to the Erie policy, the term "anyone we protect" is defined with reference to a "special meaning" specifically selected by Erie, and that under West Virginia law, when a term or expression is defined by a statute, rule, or contract, the Court uses the intended meaning of words or terms. Mrs. Shoaf

13

maintains that by including the pronoun "anyone" within the defined expression, Erie has created a situation in which its intentional acts exclusion is not operative if "anyone" it indemnifies commits an intentional act that causes damages. She argues that the only damages which are excluded are those that were intentionally caused by all insureds, because "anyone we protect" is defined collectively as "you and ... relatives and wards." She asserts that the definition of "anyone we protect" is conjunctive ("and") not disjunctive ("or"). In reading the policy exclusion this way, she contends that it does not operate unless *both* Patricia Shoaf *and* Rachel Shoaf intended the death of Skylar Neese.[8]

This Court has held that "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986). *Accord Polan v. Travelers Ins. Co.*, 156 W.Va. 250, 255, 192 S.E.2d 481, 484 (1972). ("[T]he terms of an insurance policy should be understood in their plain, ordinary and popular sense, not in a strained or philosophical sense."). "Where the provisions of an insurance policy contract are clear and unambiguous they

---

[8] In a brief summary response, Tara Clendenen only addresses the second certified question presented and asserts a blanket argument that with respect to the ANPAC policy, the severability clause and intentional or criminal act exclusions are irreconcilable, reasonably susceptible to two different meanings, and are, therefore, ambiguous. James Clendenen filed a separate summary response arguing, for the first time, that certain provisions and definitions in the ANPAC policy are ambiguous. Because his specific arguments were not previously presented to the district court and are therefore not within the parameters of the two questions certified, we will not address the issues raised in Mr. Clendenen's summary response.

14

are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 153 W. Va. 813, 172 S.E.2d 714 (1970).

By contrast, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. Pt. 1, *Prete v. Merch. Prop. Ins. Co.*, 159, W. Va. 508, 223 S.E.2d 441 (1976). *See also, Payne v. Weston*, 195 W.Va. 502, 507, 466 S.E.2d 161, 166 (1995) ("a court should read policy provisions to avoid ambiguities and not torture the language to create them") (citations and internal quotations omitted); *Surbaugh*, 231 W. Va. at 292-93, 745 S.E.2d at 183-84. "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. Pt. 4, *Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987). However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." *Surbaugh*, 231 W. Va. at 295, 745 S.E.2d at 186.

In this case, ANPAC and Erie excluded coverage because an intentional or expected act was committed by "any insured" or "anyone . . . protect[ed]." We do not

believe that these phrases are ambiguous. The policy language expressly excludes coverage for damages caused by the intentional acts of *any* insured. We therefore turn to the consideration of whether the application of this unambiguous language precludes coverage to *all* insureds for claims of bodily injury arising from intentional and/or criminal conduct by *any* insured, irrespective of whether the particular insured seeking coverage committed the intentional or criminal act resulting in the bodily injury.

Unambiguous intentional/criminal acts exclusions have been held consistent with public policy in other jurisdictions irrespective of whether the insured seeking coverage is accused of intentional, criminal or just negligent conduct. Indeed, the majority of jurisdictions to consider the question raised herein by the first certified question apply intentional acts exclusions similar to the exclusions in ANPAC and Erie's policies to preclude coverage to an insured based on the intentional or criminal acts of a co-insured. The majority of courts have held that unlike the phrase, "the insured," the phrase "any insured" unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured.

In *Chacon v. Am. Family Mtt. Ins. Co.*, 788 P.2d 748, the insureds, Reyes and Sarah Chacon, sought coverage from American Family Mutual Insurance Company ("American Family") based on the severability clause of their insurance policy. The Chacons sought coverage for liability stemming from their son's vandalism of a local

school building. The Chacons, like Tara Clendenen and Patricia Shoaf, argued that the severability clause, which provided that "each person described above is a separate insured under this policy," created coverage in the face of an intentional or expected acts exclusion that excluded coverage for the intentional or expected acts of "any insured." The Colorado Supreme Court rejected the Chacons' argument, holding that American Family had properly excluded coverage for the Chacons based on the intentional acts of the son, an insured under the policy. Significantly, in its decision, the *Chacon* Court distinguished between the phrase "the insured" and the phrase "any insured:"

> Initially, the 'intentional act' exclusion contained in the Chacons' homeowner's policy referring to the actions of 'any insured,' must be distinguished from those policies which refer to the actions of 'the insured.' The majority of courts which have considered this issue have held that 'unlike the phrase 'the insured,' the phrase 'any insured,' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured.

*Id*. at 751. The Colorado court also explained that the language "any insured" excluded coverage for all insureds based on the intentional or expected acts of any person insured under the policy.

> We find the reasoning of the majority of courts more persuasive than that of *Worcester*, because it considers and gives effect to all the policy provisions and recognizes that an insurance policy is a contract between the parties which should be enforced in a manner consistent with the intentions expressed therein.

*Id*. at 752. The court found that

> [a]n insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation. . . . This approach acknowledges that:

17

> [A]n insurance contract is a mutual agreement, ratified by the insured by his acceptance, both parties are bound by its provisions, unless waived or annulled for lawful reasons. In the absence of statutory inhibition, an insurer may impose any terms and conditions consistent with public policy which it may see fit.

*Id*. (*quoting* Appleman, INSURANCE LAW AND PRACTICE § 7004, at 37-39 (rev. ed. 1981) (footnotes omitted)).

In a similar case, the Court of Appeals of Louisiana found that homeowner and farm liability policies excluded coverage for the parents' alleged negligent supervision of their minor child who threw another minor through a plate glass window. *Perkins v. Shaheen*, 867 So.2d 135 (La. App. 3rd Cir. 2004). The policies at issue excluded from coverage bodily injury "resulting from intentional acts or directions by you or any insured." *Id*. at 137. In holding the exclusionary language applied to the negligent supervision claim, the Court noted that the "exclusionary clause is not restricted to intentional acts of the particular insured sought to be held liable, but it is broad enough to exclude coverage for any loss intentionally caused, or at the direction of, an insured person. . . ." *Id*. at 139 (*citing Neuman v. Mauffray*, 771 So. 2d 283 (La. App. 1st Cir. 2000)). The *Perkins* Court also explained the purpose of the intentional acts exclusion:

> The focus of the policy exclusion is on the *cause of the damages*, not the cause of action alleged. All damages caused by intentional acts are excluded, regardless of the classification of the cause of action against the individual defendants. [The plaintiff] cannot avoid the consequences of the policy language by attempting to couch her allegations against the [defendant parents] as negligent, rather than intentional.

18

*Id.* (emphasis added).

In *Postell v. American Family Mutual Insurance Co.*, 823 N.W.2d 35 (Iowa 2012), the Supreme Court of Iowa held that an innocent insured spouse whose co-insured husband started a house fire in a suicide attempt could not recover under a homeowner insurance policy that included an exclusion for intentional loss "by or at the direction of any insured." *Id.* at 45 (emphasis added). In that case, the court reasoned:

> It is well-settled law in this state that the use of the words, "any insured," is an unambiguous phrase that precludes coverage for all insureds, including an innocent coinsured spouse. . . . In *Vance* [*v. Pekin Insurance Company*, 457 N.W.2d 589 (Iowa 1990)], we went so far as to encourage insurance companies to purge their fire insurance policies of ambiguity by replacing the exclusion of language of "the" insured with "a," "any," or "an" insured. 457 N.W.2d at 593. (*citing* Leane English Cerven, *The Problem of the Innocent Co-insured Spouse: Three Theories on Recovery*, 17 Val. V.L. Rev. 849, 872 (1983)). This rule is consistent with other jurisdictions.
>
> . . . .
>
> Therefore, under our long-standing rule of construing "any insured" in insurance policies as barring recovery to the innocent coinsured spouse, American Family properly denied coverage . . . under the intentional loss exclusion.

*Id.* (citations omitted) (footnote omitted).

The court noted in *Postell* that many jurisdictions follow this well-settled law:

> *See Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 752 (Colo. 1990) (finding "any insured" created a joint obligation under the policy's intentional acts exclusion applying to the insured innocent parents and

19

insured minor son who committed vandalism); *Trinity Universal Ins. Co. v. Kirsling*, 139 Idaho 89, 73 P.3d 102, 105 (2003) (holding that an intentional acts exclusion which excluded "any loss" arising out of any act committed by or at the direction of "an insured" and "'with the intent to cause a loss" barred coverage); *Woodhouse v. Farmers Union Mut. Ins. Co.*, 241 Mont. 69, 785 P.2d 192, 194 (1990) (holding "an insured" unambiguously bars coverage to an innocent coinsured); *McAllister v. Millville Mut. Ins. Co.*, 433 Pa. Super. 330, 640 A.2d 1283, 1289 (1994) (denying coverage to innocent coinsured when other insured committed arson and policy included an intentional acts provision referring to "an insured" and a neglect exclusion referring to "any insured"); *Dolcy v. R.l Joint Reins. Ass 'n*, 589 A.2d 313,316 (R.I. 1991) (holding that the policy's intentional loss exclusion referring to "an insured" imposes a joint obligation); *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685, 688 (Utah 1999) (finding the intentional loss exclusion referring to "an insured" denied coverage to innocent coinsured when the other coinsured burned down the house); *see also Century-Nat'l Ins. Co. v. Garcia*, 51 Cal. 4th 564, 568-69, 120 Cal. Rptr. 3d 541, 246 P.3d 621 (2011) (recognizing that statutory language of "any insured" increasing the hazard of loss or concealing fraud refers to joint or collective liability, not several as when the standard policy refers to "the insured").

823 N.W.2d. at 45-46 n.6.

Similarly, in *J.G. v. Wangard*, 753 N.W.2d 475 (Wis. 2008), the Supreme Court of Wisconsin held that an exclusion for any damages arising out of an act intended by "any covered person" unambiguously barred liability coverage for the wife's alleged negligence in failing to prevent her husband's intentional sexual assaults of a minor. *Id.* at 488. The court reasoned:

We . . . conclude that Great Northern and Pacific's use of the phrase "any covered person" in the policies' intentional acts exclusions, like the phrase "any insured" . . . unambiguously precludes coverage for all insureds. The express language of the two homeowner's policies in question broadly excludes from coverage "any damages *arising out of* an act intended by *any*

20

*covered person* to cause personal injury or property damage." (emphasis added.) Without considering whether [wife's] negligent conduct was itself "intentional," . . . it is clear that J.G.'s and R.G.'s alleged damages arose out of [husband's] intentional wrongful conduct. For this reason, the exclusion plainly bars coverage as to Steven and to Deborah if, as is undisputed, J.G. and R.G.'s personal injury damages arose out of Steven's intentional sexual contact with J.G.

*Id*. (citations omitted).[9]

---

[9] *See also Am. Family Mut. Ins. Co. v. White*, 65 P.3d 449, 503 (Ariz. Ct App. 2003) (court prohibited recovery in a similar case where the insured sought coverage for negligent supervisions claims after his minor son struck the plaintiff in the head and the insured's policy contained a "violation of criminal law" provision which excluded coverage "arising out of...violation of any criminal law for which any insured is convicted."); *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1046-47 (Colo. 2011) (rejecting the proposition that a criminal acts exclusion in an excess insurance policy was void as against public policy, and noting that "not only is it the public policy of this state to protect tort victims, but it is also the public policy of this state to provide insurers and insureds the freedom to contract, allowing insurers to shift risk based on their insureds' misconduct, especially when that misconduct significantly increases the risk of insurers' liability and may be encouraged by indemnification."); *Am. Family Mut. Ins. Co. v. Corrigan,* 697 N.W.2d 108, 116-117 (Iowa 2005) ("Although insurance policies are interpreted favorably toward the insured, this rule applies only when there is an ambiguity in the policy, and we have found none here.... No statute, rule, or prior decision of this court has been identified that would make the insurance policy provisions at issue here against public policy."); *Villa v. Short*, 947 A.2d 1217, 1219  (N.J. 2008) (holding that an intentional acts exclusion unambiguously excluded liability coverage for claims against all insureds based on the intentional acts of any insured where the insureds were sued in connection with sexual assaults committed by their son); *Co-operative Ins. Cos. v. Woodward,* 45 A.3d 89 (Vt. 2012) (holding that an exclusion in the insured's homeowner policy for loss caused by the intentional acts of "an insured" applied to both insureds under the policy and precluded coverage for claims of the insured wife's negligent supervision of her husband who kidnapped, drugged, sexually assaulted, and killed his niece).

While Mrs. Shoaf asserts, as noted above, that the definition of "anyone we protect" in Erie's policy must be construed conjunctively, we find her argument unconvincing.[10] In *Kundahl v. Erie Insurance Group*, 703 A.2d 542 (Pa. Super. 1997), the court rejected an argument similar to the argument made by Mrs. Shoaf. In *Kundahl*, the court held as follows:

> [I]n the present case, the Kundahls' homeowner's policy specifically precludes coverage of loss where the intentional or negligent acts by "anyone we protect" caused the loss. A loss caused by "anyone we protect" unequivocally evinces joint responsibility, since the term "anyone" is naturally inclusive as opposed to exclusive. *See* Webster's New Collegiate Dictionary 93 (9th Ed. 1987). Thus, if any one [insured] violates the policy, coverage must be denied to all insureds. *See McAllister* [*v. Millville Mm.*

---

[10] Again, the policy contains the following definition:

"[A]nyone we protect" means you and the following residents of your household:

1. relatives and wards:

2. other persons in the care of anyone we protect.

Under Home and Family Liability Protection, anyone we protect also means:

3. any person or organization legally responsible for animals or watercraft which are owned by you, or any person included in 1. or 2., and covered by this policy. Any person or organization using or having custody of custody of these animals or watercraft in the course of any business, or without permission of the owner is not anyone we protect;

4. any person with respect to any vehicle covered by this policy. Any person using or having custody of this vehicle in the course of any business use, or without permission of the owner is not anyone we protect.

*Ins. Co.*, 433 Pa. Super. 330, 640 A.2d 1283, 1289 (1994)] ("The use of the terms 'any' and 'an" in the exclusions clearly indicate that the insureds" obligations under the policy's neglect and intentional provisions are joint, not several."' (emphasis added). We conclude, therefore, that the trial court erred in finding that the homeowner's policy was ambiguous. *McAllister, supra.*

703 A.2d at 545 (citation omitted) (footnote omitted).

With respect to Mrs. Shoaf, Erie's policy did not limit its intentional acts exclusion to only the insureds that actually committed the intentional act by using language limiting coverage for only "the" insured. Rather, Erie excluded coverage to all insureds for intentional or expected acts by "anyone we protect." This distinction is significant as it clearly evidences the insurer's intent to create a co-obligation between the insureds covered by the policy and to exclude coverage for all insureds based on the intentional or expected acts of any insured. Accordingly, we conclude that Erie's homeowner's policy specifically excludes coverage of loss to any insured where the intentional acts by "anyone we protect" caused the loss. A loss caused by "anyone we protect" unequivocally evinces joint responsibility, since the term "anyone" is naturally inclusive as opposed to exclusive. *Kundahl*, 703 A.2d 542. Thus, if any one [insured] violates the policy, coverage must be denied to all insureds. *See Payne*, 195 W.Va. at 507, 466 S.E.2d at 166 ("a court should read policy provisions to avoid ambiguities and not torture the language to create them") (citations and internal quotations omitted); *Surbaugh*, 231 W. Va. at 292-93, 745 S.E.2d at 183-84. A policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable

23

interpretation, consistent with the intent of the parties. *See, e.g., Thompson v. State Auto. Mut. Ins.*, 122 W.Va. 551, 554, 11 S.E.2d 849, 850 (1940). The same analysis applies to ANPAC's policy related to Mrs. Clendenin.

Here, the Neeses seek the same wrongful death damages against both Sheila and Rachel and their mothers. The focus of the intentional/criminal acts exclusions is on the cause of the damages, not the negligent supervision and negligent entrustment causes of actions alleged against Tara Clendenen and Patricia Shoaf. *Perkins*, 867 So.2d at 139. As all such bodily injury claims arise from the intentional and criminal conduct of Sheila Eddy and Rachel Shoaf, insureds under the policy, the exclusions preclude coverage for all of the claims. Additionally, since the exclusionary language is admittedly unambiguous, we conclude that the applicable policy exclusions create joint obligations and prohibit coverage for the Neeses' claims against Tara Clendenen and Patricia Shoaf.

In so finding, we conclude that the subject exclusions are consistent with our public policy. Our case law makes it clear that our public policy and rules of construction require courts to apply intentional and criminal act exclusions to torts based on intentional acts even when the claims are couched in terms of negligence.

24

This Court has observed that intentional acts exclusions and exclusions that remove a whole class of injuries from coverage are consistent with the public policy of this State, even where the result of the same is to deprive innocent victims of compensation. *See Horace Mann Ins. Co. v. Leeber*, 180 W. Va. 375, 380-81, 376 S.E.2d 581, 586-87 (upholding an "intentional injury" exclusion and precluding coverage where an insured teacher was sued for having sexual contacts with a minor student. "[T]he allegations of 'negligence' [against the school board] in the complaint are 'a transparent attempt to trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of 'negligent' activity'". . . "Most courts conclude that it is against public policy to permit insurance coverage for a purposeful or intentional tort, [meaning a tort involving the intent to act and to cause some harm]."); *see also Rich v. Allstate Ins. Co.*, 191 W. Va. 308, 310, 445 S.E.2d 249, 251 (1998) (holding a "family exclusion" consistent with public policy in a negligence case brought against an insured grandparent where a minor child residing in the insured household was injured while riding a lawnmower. "[T]here is no legislative declaration regarding the requirements of homeowner's insurance coverage. Therefore, the parties must rely exclusively upon the policy language in order to determine whether there is coverage in this instance.").[11]

---

[11] These are not the only instances where this Court has found that intentional acts exclusions and exclusions that remove a whole class of injuries from coverage are consistent with the public policy of this State. *See Berkhouse v. Great American Assurance Co.*, No. 13-0264, 2013 WL 6152414 (W. Va. Nov. 22, 2013) (holding that an umbrella policy's liquor liability exclusion that excluded "[a]ny liability of any

(continued . . .)

25

While Respondents focus their arguments almost exclusively on this Court's discussion in *Columbia Casualty* in arguing that the applicability of the policy exclusions should be viewed from the standpoint of Mrs. Clendenen and Mrs. Shoaf, we believe that this reliance on *Columbia Casualty* is misplaced. In that case, this Court considered a question certified from the Fourth Circuit regarding whether two inmate

'Insured,'" excluded coverage for negligent training and supervision claims against the Charleston Moose Lodge); *Sayre v. State Farm Fire & Casualty Co.*, No. 11-0962, 2012 WL 3079148 (W. Va. May 25, 2012) (upholding the validity of a family exclusion in a homeowner policy that excluded liability coverage for bodily injury to "'you [the named insured] or any insured'" where the husband, a named insured, killed his wife, also a named insured); *West Virginia Fire & Casualty Co. v. Stanley*, 216 W. Va. 40, 602 S.E.2d 483 (2004) (precluding coverage for negligent supervision claims against a husband and wife in an action arising from the alleged sexual misconduct of their minor son, a co-insured); *Smith v. Animal Urgent Care. Inc.*, 208 W. Va. 664, 542 S.E.2d 827 (2000) (finding that the inclusion of negligence-type allegations in a complaint that was in essence a sexual harassment claim will not prevent the operation of an "intentional acts" exclusion contained in an insurance liability policy). Additionally, applying West Virginia law, in *Westfield Insurance Co. v. Merrifield*, No. 2:07-cv00034, 2008 WL 336789, **5-6 (S.D.W. Va. Feb. 5, 2008), the Southern District of West Virginia held that a homeowner insurance policy did not provide coverage for negligence claims brought against insured parents whose son was convicted of first degree murder, death of a child by guardian or custodian, and sexual abuse by a guardian. The policy contained an exclusion for bodily injury "arising out of sexual molestation, corporal punishment or physical or mental abuse." The Court rejected the mother's argument that *Columbia Casualty Co. v. Westfield Insurance Co.*, 217 W. Va. 250, 617 S.E.2d 797, should be extended to require the policy exclusions -as opposed to the insuring language involved in *Columbia Casualty* -to be viewed from the perspective of the mother. The Court reasoned that the policy unambiguously barred coverage for injuries arising out of sexual molestation. Because the only harm alleged in the underlying complaint was the death of a child caused by his physical and sexual abuse, the "bodily injury" arose from sexual molestation by Michael Merrifield, not from the negligent or intentional acts of his parents. *Merrifield*, 2008 WL 336789 at **5-6.

26

deaths by suicide in the Randolph County Jail were "occurrences" under an insurance policy issued to the Randolph County Commission. This Court concluded that there was potential insurance coverage for the claims made against the Randolph County Commission by the estates of the two inmates who committed suicide because when the policy language was applied to and from the perspective or standpoint of the county commission the deaths were "occurrences" under the insurance policy terms. 217 W. Va. at 251, 617 S.E.2d at 797-98.

We noted that because of the specific language used in the Fourth Circuit's certified question, we did not need to discuss the relationship between the terms "occurrence" and "accident" in the insurance policy at issue, or the exclusionary language in the policy relating to intentional acts, except to say that no other language in the policy appeared to be inconsistent with its holding. *Id.* at 253 n.2, 617 S.E.2d at 799 n.2. Thus, *Columbia Casualty* concerned the issue of what is an "occurrence" under West Virginia law where, as this Court noted, the term "accident" was not defined in the policy. *Id* at 252, 617 S.E.2d at 799. Applying the rule of syllabus point five of *Tackett v. American Motorists Ins. Co.*, 213 W. Va. 524, 584 S.E.2d 158 (2003), this Court resolved the corresponding "doubt" regarding coverage in favor of the insured. 217 W.Va. at 252, 617 S.E.2d at 799. We decline to extend our holding in *Columbia Casualty* beyond its context. As we cautioned in that Opinion,

> [d]iscussions in judicial opinions of insurance coverage issues often involve parsing the convoluted and confusing language of insurance policies. There

27

is an elevated risk in such discussions of making similarly convoluted and confusing judicial statements - particularly when the statements are taken outside of the boundaries of the case in which they are made.

*Id.* at 251-52, 617 S.E.2d at 798-99.

Because the claims for wrongful death damages in the Complaint are all inextricably tied to the intentional criminal conduct of Sheila Eddy and Rachel Shoaf, insureds under the ANPAC and Erie policies, and because public policy favors application of unambiguous intentional/criminal acts exclusions as written, we conclude that the first certified question must be answered in the affirmative.

## B. Second Certified Question

The second certified question presented by the district court asks whether the unambiguous severability clauses in the insurance policies, which state that the insurance applies separately to each insured, prevail over the exclusions within the policies and require the insurers to apply the exclusions separately to each insured, despite the intentional and criminal actions of co-insureds.

ANPAC and Erie contend that the second certified question must be answered in the negative because the severability clauses in the policies do not conflict with the application of the intentional/criminal act exclusions as written. They argue that to hold otherwise would do violence to the plain language of the insurance policy and the

intent of the parties without furthering the historical purpose of the severability condition. They assert that the majority of courts across the country addressing the impact of severability clauses on exclusionary language utilizing "an insured" or "any insured" have concluded that the severability clause has no bearing on the application of the exclusionary language. They also maintain that the severability clause was created to apply to exclusions referencing "the insured," such as employee exclusions or workers' compensation exclusions. *See Wheeler*, 842 N.W.2d at 107-08 (*citing* 3 Windt, INSURANCE CLAIMS AND DISPUTES (6th Ed.), Section 11:8). They contend that the clause is "intended to afford each insured a full measure of coverage up to the policy limits, not to negate the policy's intentional acts exclusion." *Allstate Ins. Co. v. Kim*, 121 F. Supp 2d 1301, 1308 (D. Haw. 2000).

Conversely, the Respondents argue that the insurers' severability language specifically stating that "this insurance applies separately to," "each insured" (in the ANPAC policy), and "to anyone we protect" (in the Erie policy), results in the exclusions being applied separately to Mrs. Clendenen and Mrs. Shoaf, neither of whom is alleged to have committed any intentional or criminal acts for which coverage is sought. They argue that even if the exclusionary provisions have the effect of precluding coverage for a negligent insured based on the intentional or criminal acts of a co-insured, as the Petitioners argue, there is at least a conflict between the exclusions and the severability provisions. They contend that applying standard rules of contract construction applicable

29

to West Virginia insurance contracts, the ambiguity created by the conflict must be resolved against the insurer and in favor of the insured. Or, as framed by the second certified question, the severability provisions must "prevail over the exclusions and require the insurers to apply the exclusions separately to each insured, despite the intentional and criminal actions of co-insureds."

The ANPAC severability clause provides, "This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence." The policy defines "Insured" as follows:

6. "Insured" means you and the following residents of your household:
   a. your relatives;
   b. any other person under the age of 21 who is in the care of any person named above.

Similarly, the Erie severability provision provides, "This insurance applies separately to anyone we protect." Under the policy,

"anyone we protect" means you and the following residents of your household:
   1. relatives and wards;

   2. other persons in care of anyone we protect ....

Although this issue has never been squarely addressed by this Court, we recently determined that a severability clause does not defeat a family exclusion. In *Sayre v. State Farm Fire & Casualty Co*., No. 11-0962, 2012 WL 3079148 (W. Va. May 25,

30

2012), this Court rejected the insured's argument that a severability clause in the "Conditions" section of a homeowner's policy created an ambiguity that defeated a family exclusion. We agreed with the circuit court's conclusion that the severability clause had no application and concluded that summary judgment for State Farm was proper. *Id* at *2.

Numerous courts have reviewed the interplay between severability clauses that apply the insurance policy to all insureds and exclusions based on intentional or expected acts. As referenced above, the majority of these courts have found that, where the language of a policy excludes coverage for the intentional acts of "any" insured and an insured commits an intentional or expected act, coverage is excluded for all insureds.[12]

---

[12] *See American Family Mutual Insurance Co. v. White*, 65 P.3d at 456 ("Most courts that have construed the phrase 'any insured' in an exclusion have found that it bars coverage for any claim attributable to the excludable acts of any insured, even if the policy contains a severability clause. We join that majority."). *See also Chacon,* 788 P.2d at 752 (preferring to give full effect to exclusions referring to "any insured," despite a severability clause, in order to respect the party's contractual expectations and enforce the court's contractual analysis); *EMCASCO Ins. Co. v. Diedrich,* 394 F.3d at 1097-98 (imposing joint obligations under South Dakota law for an intentional acts exclusion referring to "one or more insureds," despite the severability clause)*; Allstate Ins. Co. v. Kim,* 121 F. Supp. 2d 1301, 1308 (D. Hawaii 2000) (finding "an insured" is unambiguous, applies to innocent coinsureds, and is not affected by the severability clause); *J.G. v. Wangard*, 753 N.W.2d 475 (holding severability clause did not render "any insured" exclusion ambiguous); *SECURA Supreme Ins. Co. v. M.S.M*, 755 N.W.2d 320, 328-29 (Minn. Ct. App. 2008) (holding that the severability clause did not make the criminal acts exclusion referring to "any" insured ambiguous); *Mut. of Enumclaw Ins. Co. v. Cross*, 10 P.3d 440, 445 (Wash. App. 2000) (holding that "an insured" exclusion was "clear and specific language [that] prevail[ed] over a severability clause, *i.e.*, that an

(continued . . .)

In a case similar to the instant one, *SECURA*, the Court of Appeals of Minnesota found that coverage was precluded for a negligent supervision claim filed against a minor child's parents after their son attacked a neighbor. 755 N.W.2d at 322. Therein, the court considered the issue of whether the criminal acts exclusion and the severability clause can co-exist. The court concluded that the criminal acts exclusion was unambiguous and applied to the claims against the parents. The court found,

> Larson's injuries were undeniably causally connected to M.S.M.'s criminal conduct in attacking her. As such, Larson's injuries "result[ed] from" this criminal act, notwithstanding the fact that the McArdles' negligence may have also contributed to the same injuries. Accordingly, the district court

exclusion is not negated by or rendered ambiguous by a severability clause"); *Johnson v. Allstate Ins. Co.*, 687 A.2d 642 (ME 1997) ("An unambiguous exclusion is not negated by a severability clause."); *see also Safeco Ins. Co. of Am. v. White,* 913 N.E.2d 426, 440 (Ohio 2009) (collecting cases with majority view); *Postell*, 823 N.W.2d at 46-47 ("We have already considered the question of what effect severability-of-interest clauses have on insurance policy exclusions. The answer-none . . . Our rule remains consistent with the majority position of other jurisdictions"); *Am. Family Mut. Ins. Co. v. Copeland-Williams*, 941 S.W.2d 625, 627-29 (Mo. Ct. App. 1997) (holding that "any insured" in the exclusionary clause is unambiguously collective rather than several, despite severability clause); *Northwest G.F. Mut. Ins. Co. v. Norgard*, 518 N.W.2d 179 (N.D. 1994)("the purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded."); *Villa v. Short*, 947 A.2d at 1224-25 (finding that a severability clause does not inject ambiguity or remove the joint obligation imposed by intentional and criminal acts exclusions referring to either "an insured" or "any insured"); *McAllister [v. Millville Mut. Ins. Co.*, 433 640 A.2d 1283, 1289 (Pa. Sup. 1994)] (finding joint obligations under the exclusion even though the policy defined each named insured as a "separate insured"); *Great Cent. Ins. Co. v. Roemmich*, 291 N.W.2d 772, 774-75 (S.D. 1980) (establishing that an exclusion applying to "any insured" is unambiguous and unaffected by a severability clause).

correctly interpreted and applied this phrase in SECURA's policy to allow invocation of the criminal-act exclusion.

*Id*. at 327-28.

Addressing Larson's argument that the "any insured" language of the criminal acts exclusion was inconsistent with the severability clause, the court noted that, in contrast to the situation where the exclusion uses the phrase, "the insured," an exclusion that employs the phrase, "'any insured' or 'an insured'... unambiguously excluded coverage' for the ["innocent" co-insured]." *Id*. at 328 (*quoting Travelers Indem. Co. v. Bloomington Steel & Supply Co*., 718 N.W.2d 888, 895 (Minn. 2006)). With respect to the applicability of the severability clauses, the Court went on to hold that,

> A simple application of the policy reinforces our conclusion that no ambiguity is created when the two clauses interact. When applying the criminal-act exclusion to Patrick McArdle alone, as the severability clause requires, the plain and unambiguous result is the exclusion of coverage for Larson's negligence claim because the bodily injuries that her claim is premised on "result[ed] from" the "criminal acts" of "any insured," with the "any insured" being M.S.M. The same result occurs when the policy is applied separately to Suzanne McArdle. The act of applying the policy separately to each insured does not alter or create ambiguity in the substance or sweep of the exclusion. Because there is no ambiguity, there is no basis for application of the reasonable-expectation doctrine.

755 N.W.2d at 329. The court held that summary judgment was proper as to the parents' claim for coverage "[b]ecause the [criminal acts] exclusion precludes insurance coverage for Larson's injuries that she sustained when M.S.M. attacked her." *Id.*

33

Likewise, a United States District Court in the Fourth Circuit has also adopted the majority rationale with respect to applicability of a severability clause. In *Standard Fire Insurance Company v. Proctor*, 286 F. Supp. 2d 567 (D. Md. 2003), another case of assault and battery, an insured sought coverage under a homeowner's policy for liability stemming from his son's beating of a neighbor after a dispute about an auto accident. After dispensing with the question of whether the Plaintiff properly pleaded a negligence claim, the U.S. District Court for the District of Maryland held that the insurer, Standard Fire Insurance Company ("Standard Fire") properly excluded coverage:

> This Court, however, agrees with the majority of jurisdictions who have taken the alternative approach and interpreted "any insured" as unambiguously expressing "a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured." In *Chacon*, the homeowner's policy indicated that personal liability coverage did not extend to "bodily injury or property damage . . . which is expected or intended by any insured," and included a severability clause providing that "each person described above is a separate insured under this policy." The court indicated that a severability clause "is not inconsistent with the creation of a blanket exclusion for intentional acts." Furthermore, the court concluded that the "any insured" provision "clearly and unambiguously expresses an intention to deny coverage to all insured when damage is intended or expected as a result of the actions of any insured."

*Id. at* 574-575 (Internal citations omitted).

Additionally, in *Allstate Ins. Co. v. Kim*, the District Court of Hawaii addressed a similar situation where parents sought coverage for the negligence claims against them arising from an assault committed by their minor son. The court found

34

coverage was precluded by the intentional acts exclusion even though the policy contained a limit of liability clause stating "this insurance applies separately to each insured person." 121 F.Supp.2d at 1307-08. The court observed that the intentional acts exclusion was consistent with the "sound public policy that a wrongdoer should not profit from his own wrongdoing or be indemnified against the effects of his wrongdoing" and "public policy against insurance for losses resulting from such acts." *Id.* at 1306-07. Determining that the limits of liability clause did not prevent application of the intentional acts exclusion to bar coverage for the alleged negligence of the parents, the *Kim* Court noted the provision, "was intended to afford each insured a full measure of coverage up to the policy limits, not to negate the policy's intentional acts exclusion." *Id.* at 1308. The court observed that "the majority of courts" have held that the "any insured" exclusion expresses a "contractual intent to create joint obligations and preclude coverage to innocent co-insureds," despite the presence of a severability clause. *Id.* To hold otherwise "would effectively nullify exclusions from coverage in any case involving coinsured and a policy with a severability provision." *Id.* at 1309.

The *Kim* Court further remarked that "[i]t is inconceivable that parties to a policy would include clauses specifically excluding coverage for claims based on certain types of conduct, but intend those exclusions to have no effect in any case involving claims against coinsured spouses." *Id. (quoting California Casualty Ins. Co. v. Northland Ins. Co.*, 48 Cal.App.4th 1682 (1996)). To the contrary,

35

> The plain, ordinary, and accepted sense in common speech meaning and interpretation of the exclusion clause is that it is a specific and tailored provision designed to notify the policy holders that they are not covered for any intentional or criminal act and to so limit coverage. The plain, ordinary meaning of the Limits of Liability Clause is that it spreads the protection of the insurance policy to all the insureds up to the policy limits and is not designed to negate the exclusions which are plainly worded.

121 F.Supp. at 1309. Accordingly, the court concluded that the insurer had no duty to defend and indemnify parents in the negligence action. *Id*.

While the Respondents herein urge this Court to adopt the minority view espoused by the California Supreme Court in *Minkler v. Safeco Ins. Co. of Am.*, 232 P.3d 612 (Cal. 2010) and find that a conflict exists between the exclusions and the severability provisions, we find their argument unpersuasive. In *Minkler*, the alleged victim of sexual molestation by the adult son of the Safeco policyholder sued both the perpetrator and the policyholder mother. The claim against the policyholder mother was for negligent supervision. *Id.* at 615. The plaintiff obtained a default judgment against the policyholder mother and settled for an assignment of her rights against Safeco. The plaintiff then brought a suit in federal court against Safeco for breach of contract and breach of the covenant of good faith and fair dealing. *Id*. at 616. Citing the severability of interests clause, the plaintiff argued that the policyholder mother was entitled to coverage notwithstanding the intentional acts exclusion cited by Safeco in denying coverage and defense in the underlying claim. *Id*.

36

The Supreme Court of California found that "the original intent [of the severability clause] was to make clear the separate application of policy exclusions, not just liability limits, to each individual insured." *Id*. The *Minkler* Court went on to explain that when the severability clause was juxtaposed against an intentional acts exclusion using the term "an insured" or "any insured," an ambiguity resulted in which the Court had to find that the policy "'[c]ondition []' stating that '[t]his insurance' applies separately to each insured is not reasonably susceptible of the construction that the entire policy, particularly its exclusions from coverage, has such a separate effect as to each insured." *Id*.[13]

We are unconvinced by *Minkler* and the small minority line of cases holding that the two provisions cannot be reconciled. Other Courts have reached this same result. As the Nebraska Supreme Court observed in *Wheeler*, 842 N.W.2d at 107, in exploring the history and purpose of severability clauses,

---

[13] A*ccord.*, *Premier Insurance Co. v. Adams*, 632 So.2d 1054, 1055 (Fla. Dist. Ct. App. 1994) (finding that the severability clause juxtaposed with the intentional acts exclusion created an ambiguity to be read in the favor of the insured); Syl. Pt. 5, *Brumley v. Lee*, 963 P.2d 1224 (Kan. 1998) ("An insurance policy containing exclusionary and severability of interests clauses is construed to require that the exclusions are to be applied only against the insured for whom coverage is sought and that coverage as to each insured must be determined separately based on the facts applicable to each insured."); *Worcester Mut. Ins. Co. v. Marnell*, 496 N.E.2d 158 (Mass. 1986) (finding that the severability clause required the exclusion to be read solely against the each insured individually).

Severability clauses are common in insurance contracts, as is this particular language. Historically, severability clauses became part of the standard insurance industry form contract in 1955 to clarify ""what insurance companies had intended all along, namely that the term "the insured" in an exclusion refer[red] merely to the insured claiming coverage."'

*Id*. In also rejecting the minority view in *Minkler*, the Court reasoned:

Summed up, the majority position emphasizes the plain meaning of the "an insured" or "any insured" language in a particular exclusion. It emphasizes that the severability clause's command to apply the insurance separately to each insured does not change the exclusion's plain language or create ambiguity in its application. The minority position, on the other hand, concludes that the severability clause's command to apply the insurance separately to each insured requires that each insured's conduct be analyzed as if he or she were the only insured under the policy. Or, at the very least, such an interpretation is a reasonable one, making the policy ambiguous, which a court must construe in favor of coverage.

We find the majority position more persuasive and adopt it here. It is consistent with our oft-stated approach to give language in an insurance contract its plain meaning. We have in the past concluded that the "an insured" language, and implicitly the "any insured" language, is clear and unambiguous. Such language means what it says, and the severability clause does not operate to override this clear and unambiguous language. In other words, applying the insurance separately to each insured, as the severability clause requires, does not change that the exclusions reference "an insured" or "any insured." As one appellate court explained, "The act of applying the policy separately to each insured does not alter or create ambiguity in the substance or sweep of the exclusion."

Our goal in interpreting insurance policy language is to give effect to each provision of the contract. Adopting the minority position would render the "an" or "any" language superfluous, while adopting the majority position would not. Further, we do not agree with the ... argument that the majority position renders the severability clause meaningless. First, the severability clause affects the interpretation of exclusions referencing "the insured." There are such exclusions in these policies, such as the "Illegal Consumption of Alcohol" exclusion. And second, as American Family explained at oral argument, the severability clause still has application outside of its role in interpreting the scope of exclusion.

*Id.* at 107-08 (footnotes omitted).[14]

We likewise conclude that *Minkler* focused on the reasonable expectations of the insured without any deference to the rule of contract construction that a contract's plain and unambiguous language will be applied, not construed, by the courts. In contrast, the majority position represented by *Wheeler* adheres to the rules of insurance contract construction. We conclude that adopting the minority position would render the "any" or "anyone" language in the applicable provisions superfluous, while adopting the majority position would not. The majority position gives meaning to both the exclusion and the severability clause and is consistent with the rules of insurance contract construction this Court outlined in *Soliva*.

Accordingly, we conclude that with respect to the two insurance policies at issue in this case, the severability clause's command to apply the insurance separately to each insured does not alter the intentional/criminal act exclusions' plain meaning or create ambiguity in its application. The purpose of severability clauses is to spread

---

[14] *See also Co-operative Insurance Cos. v. Woodward*, 45 A.3d 89 (rejecting *Minkler* and hold that "assuming without deciding, that the provision at issue is a severability clause, we conclude that this clause has no effect on - and cannot override - the intentional-acts exclusion for certain acts committed by 'an insured.' . . . . Even if each insured - in this case, uncle and homeowner - is treated as having separate coverage, the exclusionary language remains unambiguous because "an" is collective. Father's contention that the two provisions "simply cannot be reconciled" is therefore without merit.").

protection, to the limits of coverage, among all of the insureds. The purpose is not to negate unambiguous exclusions. The policies should be "read as a whole with all policy provisions given effect." Syl. Pt. 1, *Soliva*, 176 W. Va. 430, 345 S.E.2d 33.

The negligent supervision and negligent entrustment claims advanced against Tara Clendenen and Patricia Shoaf are necessarily ancillary to the conduct of Sheila Eddy and Rachel Shoaf, their daughters. Just as the courts held in *SECURA*, *Proctor*, and *Kim*, when applying the severability clause to the exclusions, the exclusionary language still prohibits coverage to the allegedly negligent co-insureds. Given the fact that the damages claimed against Tara Clendenen and Patricia Shoaf all arose from the intentional and criminal conduct of their co-insureds, we conclude that coverage is excluded under these policies.

Undoubtedly, the Neeses deserve sympathy and respect for their horrific loss. That said, we must also be mindful that insurers price policies specifically based on the anticipated risk. Insurers exclude certain coverages which the insurer is either unable or unwilling to underwrite to keep costs low and accurately price insurance products for all policyholders. In this case, the Clendenens and Shoafs paid premiums that were commensurate with their coverage – which excluded coverage for all insureds caused by the intentional acts of any insured. The severability clauses contained in the ANPAC and Erie policy conditions do not alter or in any way negate the effect of the

40

intentional/criminal acts exclusions to exclude coverage for the claims asserted. Simply put, the severability clauses are not in conflict with the exclusions. For these reasons, we answer the second certified question in the negative.

## IV. CONCLUSION

For all of the foregoing reasons, we answer the first certified question in the affirmative and hold that the unambiguous exclusions in ANPAC's policy for bodily injury or property damage "which is expected or intended by any insured even if the actual injury or damage is different than expected or intended," and "arising out of any criminal act committed by or at the direction of any insured," and the unambiguous exclusion in Erie's policy for "[b]odily injury, property damage, or personal injury expected or intended by 'anyone we protect'. . ." preclude liability coverage to Tera Clendenen and Patricia Shoaf for the claims in the underlying case brought by the Neeses because the murder of Skylar Neese was expected or intended by Sheila Eddy and Rachel Shoaf, co-insureds under their respective policies. We further answer the second certified question in the negative and hold that the unambiguous severability clauses in ANPAC's and Erie's policies, which state that the insurance applies separately to each insured, do not prevail over the unambiguous intentional/criminal acts exclusions.

**Certified Questions Answered.**

41