IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0735

_____

FILED
March 3, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

FEDERAL INSURANCE COMPANY,
Third-Party Defendant Below, Petitioner,

v.

JENNY M. NEICE, Administratrix of the Estate of Jeremy R. Neice
and DANA MINING COMPANY OF PENNSYLVANIA, LLC,
Plaintiff/Third-Party Plaintiff Below, Respondents.

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Phillip D. Gaujot, Judge
Civil Action No. 17-C-483

REVERSED AND REMANDED

_____

Submitted:  January 10, 2023
Filed:  March 3, 2023

Ronald P. Schiller, Esq.
Bonnie M. Hoffman, Esq.
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Philadelphia, Pennsylvania
and
Charles R. Bailey, Esq.
BAILEY & WYANT, PLLC
Charleston, West Virginia
Counsel for Petitioner

Scott S. Segal, Esq.
Jason P. Foster, Esq.
THE SEGAL LAW FIRM
Charleston, West Virginia
Counsel for Respondent Jenny M.
Neice, Administratrix of the Estate
of Jeremy R. Neice

Tiffany R. Durst, Esq.
Nathaniel D. Griffith, Esq.
PULLIN, FOWLER, FLANAGAN,
BROWN & POE PLLC
Charleston, West Virginia
Counsel for Dana Mining Company
of Pennsylvania, LLC

JUSTICE WOOTON delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A circuit court's entry of summary judgment is reviewed *de novo*."

Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

WOOTON, Justice:

Petitioner Federal Insurance Company (hereinafter "Federal") appeals the Circuit Court of Monongalia County's March 4, 2020 and April 8, 2021, orders granting summary judgment in favor of respondents Jenny M. Neice, Administratrix of the Estate of Jeremy R. Neice (hereinafter "Neice") and Dana Mining Company of Pennsylvania, LLC ("hereinafter "Dana Mining") (collectively "respondents"), finding that Federal owed Dana Mining defense and indemnity pursuant to a liability insurance policy under which Dana Mining was a named insured. Specifically, the circuit court found that, under applicable Pennsylvania law, the policy's "Employer's Liability" exclusion ("ELE")— excluding coverage for claims or damages sustained by "any employee" arising out of his or her employment with "any insured"—was inapplicable to Neice's wrongful death action against Dana Mining because Neice's decedent was not an employee of Dana Mining.

After careful review of the briefs of the parties, their oral arguments, the appendix record, and the applicable law, we find that the circuit court erred in concluding that the ELE was inapplicable to Neice's wrongful death claim against Dana Mining. We conclude that Pennsylvania courts would adhere to the majority rule in their interpretation and application of the subject policy's ELE, finding that it bars coverage for Dana Mining as to Neice's claims. We therefore reverse the circuit court and remand for further proceedings consistent with this opinion.

1

## I.  FACTS AND PROCEDURAL HISTORY

On January 16, 2016, Neice's decedent, Jeremy Neice, was killed while working in an underground coal mine in Pennsylvania that was owned by Dana Mining, a wholly owned subsidiary of Mepco Holdings, LLC.  Mr. Neice was an employee of Mepco, LLC, a sister company of Mepco Holdings, LLC.  For the time period covering Mr. Neice's accident, Mepco Holdings, LLC was insured under a "Mining Industries" insurance policy issued by Federal.  Dana Mining and Mepco, LLC were each designated as named insureds by endorsement to the subject policy.

Neice filed a wrongful death action in Monongalia County against Dana Mining as the owner/operator of the mine.  Dana Mining tendered the complaint to Federal, seeking defense and indemnity.  Federal denied coverage based, in part,[1] on the ELE endorsement, which provides, in pertinent part:

> A.      With respect to all coverages under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any injury or damage sustained at any time by *any*:
>
> 1.      **employee** . . . of *any* **insured** arising out of and in the course of:
>
> > a.      employment by *any* **insured** . . . .

---

[1] Federal also asserted that Neice's claim did not constitute an "occurrence" under the policy and that the "Expected or Intended Injury" exclusion applied.  The circuit court rejected those coverage defenses in the orders on appeal; however, Federal assigns no error to those rulings.

B. This exclusion applies:

1. regardless of the capacity in which *any* **insured** may be liable;

2. to *any* **insured** against whom a claim or **suit** is brought, *regardless of whether such claim or* **suit** *is brought by an* **employee** . . . *of*:

    a. such **insured**; or
    b. *any other* **insured** . . . .

(Some emphasis added; language bolded in policy). Federal contended that since Mr. Neice's accident arose out of his employment with Mepco, LLC, a named insured, there was no coverage for Neice's claim against named insured Dana Mining.

Dana Mining filed a third-party complaint against Federal in the wrongful death action, seeking a declaratory judgment requiring Federal to defend and indemnify under the policy; Neice subsequently joined in the request for declaratory judgment.[2] All

---

[2] Federal filed a motion to dismiss asserting the policy's so-called "No Action" clause which provides, in part: "No person or organization has a right under this insurance to[] join [Federal] as a party or otherwise bring [Federal] into a **suit** seeking damages from an **insured**[.]" In the order on appeal, the circuit court refused relief to Federal under this provision, concluding that West Virginia procedural law expressly permits an action against an insurer to determine coverage to be brought in the underlying personal injury action. *See Christian v. Sizemore*, 181 W. Va. 628, 383 S.E.2d 810 (1989). Alternatively, the circuit court found that Federal waived this provision by failing to seek a hearing or ruling on its motion to dismiss.

Because we find Federal's first assignment of error regarding the ELE dispositive, it is unnecessary to address Federal's additional assignments of error regarding the applicability and operation of the "No Action" clause.

3

parties agreed that Pennsylvania law controlled the determination of coverage for purposes of the declaratory judgment aspect of the proceedings.

Dana Mining then sought and obtained summary judgment as to Federal's duty to defend it in the underlying litigation. In its March 4, 2020, order,[3] the circuit court concluded that Federal was obligated to defend Dana Mining under the subject policy, finding that the ELE did not operate to preclude coverage when read in conjunction with the "Separation of Insureds" provision, which states: "[T]his insurance applies[] as if each named **insured** were the only named **insured**; and separately to each **insured** against whom claim is made or **suit** is brought."

The circuit court reasoned that, under applicable Pennsylvania law, the language of this provision required it to treat other insureds under the policy as though they "d[id] not exist." Therefore, it found that the ELE's exclusion of coverage for claims by "any . . . employee" arising out of his or her employment with "any insured" must be read as excluding only claims by employees of "the lone insured as to whom coverage is to be tested," i.e. Dana Mining. Simply put, the circuit court found that the ELE was applicable to only those claims where an employee asserts a claim against his or her own insured employer. In support of this construction, the circuit court relied almost exclusively on language and reasoning from a case from Pennsylvania's intermediate appellate court—

---

[3] Federal filed an immediate appeal of this order, which we dismissed as interlocutory.

4

*Mutual Benefit Insurance Company v. Politopoulos*, 75 A.3d 528, 537 (Pa. Super. Ct. 2013) ("*Politsopoulos I*"), *aff'd on other grounds sub nom. Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844 (Pa. 2015) ("*Politsopoulos II*"). [4] *See* discussion, *infra*.

Neice then sought summary judgment on Federal's duty to indemnify Dana Mining for any damages arising from her wrongful death claim; Dana Mining joined in the motion and Federal filed a cross-motion for summary judgment on the issue. The circuit court adopted the interpretation of the ELE from the March 4 order,[5] finding that the exclusion was equally inapplicable to indemnification and therefore the subject policy provided indemnity to Dana Mining for Neice's claim. This appeal followed.

## II. STANDARD OF REVIEW

As is well-established, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). And while this Court's standard of review is governed by the law of West Virginia, the underlying issue requires the Court to ascertain how a Pennsylvania court would resolve the case at bar, similar to a federal court sitting in diversity:

---

[4] Because the Pennsylvania Supreme Court corrected the misspelling of the appellee's surname by the Superior Court, we utilize the proper spelling throughout this opinion.

[5] This order was entered when the case was pending before Judge Susan B. Tucker; the case was apparently thereafter transferred to Judge Gaujot who entered the second order on appeal.

> [W]e analogize the role of a state court ascertaining and applying the common law of another state to that of a federal court obliged to ascertain and apply state common law. When an issue of state law arises in federal court and there is no controlling decision by the state's highest court, the federal court is obliged to predict what the state's highest court would decide if confronted with the issue.

*Lucero v. Valdez*, 884 P.2d 199, 204 (Ariz. Ct. App. 1994). Although the "ultimate issue" as presented by the parties has not been expressly decided in Pennsylvania, we are likewise mindful that "[t]he absence of precedent is not the absence of law; there is law to be discovered and applied, by any court having jurisdiction." Arthur L. Corbin, *The Laws of the Several States,* 50 Yale L.J. 762, 772 (1941).

## III. DISCUSSION

As a preliminary matter, we note that Pennsylvania approaches the interpretation and construction of insurance policies much as West Virginia does. Under Pennsylvania law, "it is well established that, in construing a policy of insurance, a court is required to give plain meaning to a clear and unambiguous contract provision unless such provision violates the law or a clearly expressed public policy." *Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1261 (Pa. 2019). Further, "[w]ords of an insurance policy which are unambiguously written should be construed according to their plain and ordinary meaning, and we should give effect to that language." *Techalloy Co., Inc. v. Reliance Ins. Co.*, 487 A.2d 820, 823 (Pa. Super. Ct. 1984) (citations omitted). That said, however, Pennsylvania courts have further observed that "exclusionary clauses should be strictly construed as a general matter." *First Pa. Bank, N.A. v. Nat'l Union Fire Ins. Co.*

6

*of Pittsburgh, Pa.*, 580 A.2d 799, 802 (Pa. Super. Ct. 1990) (footnote omitted). With these principles in mind, we proceed to the parties' arguments.

A.     THE LANGUAGE OF THE ELE

The circuit court found that, by application of the "Separation of Insureds" provision, the subject ELE is inapplicable where the employee asserting the claim is not an employee of the insured seeking coverage. Federal asserts this was erroneous because the unambiguous language of the ELE plainly evidences an intent to exclude coverage for claims or suits brought by "any employee" against "any" of the insureds, regardless of whether he or she was an employee of the specific insured seeking coverage. Neice appears not to dispute this reading of the ELE itself, relying primarily on the "Separation of Insureds" provision to overcome the exclusion's purported scope. Dana Mining augments that position by arguing that ELEs are intended solely to avoid duplication of coverage with workers' compensation coverage and therefore any reading which applies the ELE outside of an employee-employer relationship is contrary to its intended purpose, creating a gap in expected coverage.

To Federal's point, we observe that the Pennsylvania Supreme Court mandates that the "terms used in the written insurance policy" are the primary source from which to discern the intended operation of an exclusion. *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). Therefore, we begin our analysis with the language of the ELE which provides that "this insurance does not apply to any damages . .

7

. arising out of any injury or damage sustained . . . by any[] . . . **employee** . . . of *any* **insured** arising out of and in the course of[] . . . employment by *any* **insured**[.]" (Emphasis added). We agree with Federal that a literal reading of this exclusion denies coverage for any insured for claims by an employee of any of the universe of insureds under the policy— regardless of whether the insured seeking coverage is the employee's actual employer or not. Although Mr. Neice was not Dana Mining's employee, Neice's claim arose out of his employment with "any insured" under the policy, i.e., Mepco, LLC.

Critically, however, the ELE does not leave the matter at that. In a passage given little to no analysis in the circuit court's order or respondents' briefs, the ELE provides further clarification of its intended reach, stating that it "applies[] . . . *regardless of the capacity in which any* **insured** *may be liable*[.]" (Some emphasis added). This "capacity" language apparently purports to clarify the scope of the exclusion to ensure that it is read as encompassing claims which may fall outside of the capacity one would expect under the exclusion—that is, employment-based claims.[6] A plain reading of this provision would suggest that it is designed to disabuse precisely the construction afforded to the ELE

---

[6] *See J&J Holdings, Inc. v. Great Am. E&S Ins. Co*., 420 F. Supp. 3d 998, 1013 (C.D. Cal. 2019), *aff'd sub nom. J & J Realty Holdings v. Great Am. E & S Ins. Co*., 839 F. App'x 62 (9th Cir. 2020) ("If the Exclusion applied only to *the employer* of employees that sustain injuries during the course of employment, the employer's liability would, of course, be in its capacity as an employer and not in "any other capacity.").

8

by the circuit court—that it applies only in scenarios involving an employee's claim against his or her own employer.

Even more germane to the issue presented, however, is the second "regardless of" clarification contained in the ELE. This provision further states that the ELE applies "to *any* **insured** against whom a claim or suit is brought, *regardless of whether such claim or* **suit** *is brought by an* **employee** . . . *of*[] . . . such **insured**[] *or* . . . *any other* **insured**[.]" (Emphasis added). As applied to the case at bar, this language would appear to reiterate that it indeed excludes coverage for Dana Mining regardless of whether Neice is "an **employee** . . . of . . . such **insured**," i.e. Dana Mining, or "*any other* **insured**," i.e. Mepco LLC. (Emphasis added).

Federal courts applying Pennsylvania law have interpreted such policy language in precisely this fashion, finding that the ELE eliminates coverage for non-employer insureds against claims arising from employment with a coinsured. *See Westminster Am. Ins. Co. v. Sec. Nat'l Ins. Co*., 555 F. Supp. 3d 75, 85 (E.D. Pa. 2021), *appeal docketed*, No. 21-2730 (3d Cir. Sept. 16, 2021) (finding that similar language specifically "accounts for" suit by employee of another insured by "explicitly stating that the exclusion apples '[w]hether an insured may be liable as an employer or in any other capacity.'"); *Great Lakes Ins. SE v. Wagner Dev. Co., Inc*., No. CV 20-553-KSM, 2021 WL 4399677, at *3 (E.D. Pa. Sept. 24, 2021) ("Other judges applying Pennsylvania law have interpreted policy provisions barring coverage when an individual has a relationship

9

with 'any insured' to mean what they say, *regardless of the precise relationship between the injured individual and the insured he or she sues*." (emphasis added)); *Markel Ins. Co. v. Young*, No. CIV.A. 11-1472, 2012 WL 2135564, at \*6 (E.D. Pa. June 12, 2012) (rejecting argument that ELE applies only to employee-employer claims and noting that "[t]he Markel insurance policy provides that the exclusion clause applies '[w]hether the insured may be liable as an employer *or in any other capacity*.'").

It would be difficult to find language which more clearly purports to exclude claims by an employee of "*any* insured"—regardless of whether the insured seeking coverage is the employer or not. In fact, this Court has previously found the term "any insured" unambiguous in the context of an exclusionary clause and respondents direct us to no Pennsylvania case to the contrary. *See Am. Nat'l Prop. & Cas. Co. v. Clendenen*, 238 W. Va. 249, 258, 793 S.E.2d 899, 908 (2016) ("We do not believe that [this] phrase[] [is] ambiguous."). It is presumably because of this relatively indisputable reading of the policy language that respondents resort to the "Separation of Insureds" provision to attempt to alter the applicability of the ELE, as discussed more fully *infra*.

B.      "ANY" INSURED AND "THE" INSURED

Before turning to respondents' argument that the "Separation of Insureds" provision alters this plain reading of the ELE, it is necessary to first address the significance of the ELE's use of the term "*any* insured," rather than "*the* insured" in its exclusion of coverage for claims by employees of "any insured" which arise from their employment.

10

Respondents contend this distinction is a mere "red herring" that does not affect the impact of the "Separation of Insureds" provision on the ELE. To the contrary, the difference between these two terms as utilized in exclusionary provisions generally informs the issue presented and provides the proper backdrop for consideration of the "Separation of Insureds" issue. Further, this threshold analysis is particularly necessary because 1) the endorsement in the instant case modified the policy's original ELE language from "the insured" to "any insured" in the applicable ELE endorsement; 2) the circuit court failed to address the significance of the two terms to any degree; and 3) the circuit court relied entirely on a case—*Politsopoulos I*— in which the policy utilized "the insured"—rather than "any insured," as contained in the instant policy.

As previously indicated, the ELE applicable in this case was issued by endorsement, replacing the ELE contained in the policy itself. However, the language of the policy ELE is still edifying for purposes of contrast with the ELE endorsement. The policy ELE provided that the insurance did not apply to claims by an employee of "*the* **insured** arising out of and in the course of[] . . . employment by *the* **insured**[.]" (Emphasis added). The policy ELE contained a similar caveat that it applied "whether the **insured** may be liable as an employer or in any other capacity[.]" However, the applicable ELE endorsement amplifies this clarification by adding the language discussed above which reiterates that the ELE applies "regardless of" whether the claimant is the employee of the insured seeking coverage or the employee of "any other **insured**."

11

By this comparison, we conclude that the ELE endorsement reflects a significant modification of the operable language of the exclusion. This modification appears to have sought to emphasize—and perhaps reshape—the breadth of the policy exclusion. *See, e.g., J&J Holdings,* 420 F. Supp. 3d at 1011 ("[I]if the parties had intended to limit the Exclusion such that it eliminated coverage only for the employer of the injured employee, it could have stated that the insurance does not apply to injuries suffered by 'an employee of *the* insured arising out of and in the course of employment by the insured.' Indeed, *the original text of the Exclusion, which the operative endorsement replaced and superseded, included that exact language.*" (emphasis added)); *Nautilus Ins. Co. v. K. Smith Builders, Ltd.*, 725 F. Supp. 2d 1219, 1230 (D. Haw. 2010) ("[T]he Endorsement Exclusion expressly modified the terms of the Policy by changing the bodily injury exclusion to cover 'bodily injury to an employee of *any insured*,' . . . and not 'bodily injury to an employee of *the insured*[.]' . . . . The court gives effect to this modification and finds that the Endorsement Exclusion precludes coverage[.]").

In fact, the substantive difference in these phrases has been the subject of considerable analysis nationwide, including both Pennsylvania and West Virginia courts. It is the "strongly established" majority view that the term "any insured" is meaningfully different from "the insured"—the former referring not only to the insured seeking coverage, but indeed "any" insured under the policy. *Id.*; *see Spezialetti v. Pac. Emps. Ins. Co.*, 759 F.2d 1139, 1141 (3d Cir. 1985) (finding that phrase "the insured" creates "some uncertainty" among coinsureds but "[t]hat deficiency does not exist here where the policy

refers to 'any insured,' not 'the insured.'"); *Clendenen*, 238 W. Va. at 258, 793 S.E.2d at 908 ("The majority of courts have held that unlike the phrase, 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured."). As one court has explained, "[t]o hold that the term '*any* insured' in an exclusion clause means '*the* insured making the claim' would collapse the distinction between the terms 'the insured' and 'any insured' in an insurance policy exclusion clause, making the distinction meaningless." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 214 (Tex. App. 2003); *see also Nautilus Ins.*, 725 F. Supp. 2d at 1229 ("To give full effect to the terms of the Policy, the court must interpret an exclusion barring coverage to '*any* insured' differently from an exclusion barring coverage to '*the* insured.'").[7]

This distinction has most often been addressed in the context of intentional act exclusions which purport to eliminate coverage for one insured due to acts by another

---

[7] *See* 3 Allan D. Windt, *Insurance Claims and Disputes: Representation of Insurance Companies & Insureds* § 11:8 (6th ed. 2023) ("Many exclusions eliminate coverage for certain actions taken by 'any' insured. Such an exclusion should be read to eliminate coverage for all insureds[.]"); *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp., Inc.*, 785 F. Supp. 2d 722, 734 (N.D. Ill. 2011) ("[T]he distinction between the terms 'the insured' and 'any insured' is . . . significant. . . . According to fundamental principles of contract construction, the difference cannot be meaningless."); *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 836 (Okla. 2005), *as corrected*, (Oct. 30, 2006) ("[T]he term 'any insured' in an exclusionary clause is unambiguous and expresses a definite and certain intent to deny coverage to all insureds"); *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 520 (7th Cir. 2022) ("'Any,' to a reasonable person, does not mean 'the' and is not limited to a particular insured's conduct. . . . 'Any Insured' is broad, yet clear in its meaning, so it does not admit of ambiguity. It would muddy the language to read 'any' to mean something other than 'without restriction.'").

13

coinsured. In that vein, policy language which excludes coverage due to the act of "any insured" has been described as creating joint obligations among coinsureds and therefore successfully operates to eliminate coverage when *any* insured breaches that obligation. Pennsylvania courts and courts applying Pennsylvania law have adhered to this view of such exclusions. *See McAllister v. Millville Mut. Ins. Co*., 640 A.2d 1283, 1289 (Pa. Super. Ct. 1994) ("The use of the terms 'any' and 'an' in the exclusions clearly indicate that the insureds' obligations under the policy's neglect and intentional provisions are joint, not several."); *Travelers Home & Marine Ins. Co. v. Stahley*, 239 F. Supp. 3d 866, 872-73 (E.D. Pa. 2017) ("Whether the intentional act of one co-insured will also preclude coverage of innocent co-insureds hinges upon the exclusionary language used in the policy. . . . This determination often turns on whether the exclusionary provision applies to 'the insured,' 'an insured,' or 'any insured.'") (footnotes omitted)); *see also Kundahl v. Erie Ins. Grp*., 703 A.2d 542, 544-45 (Pa. Super. Ct. 1997), *superseded by statute on other grounds as stated in Lynn v. Nationwide Ins. Co.*, 70 A.3d 814 (Pa. Super. Ct. 2013) ("A loss caused by '**anyone we protect**' unequivocally evinces joint responsibility, since the term 'anyone' is naturally inclusive as opposed to exclusive. Thus, if any one [insured] violates the policy, coverage must be denied to all insureds." (citations omitted)).

In *McAllister*, the Superior Court of Pennsylvania traced Pennsylvania's handling of this issue back to 1926 when the Court found that an insurance policy did not purport to insure the "interests of the assured in severalty but jointly" and therefore the act of an insured barred coverage for the innocent coinsured. *Id*. at 1286 (citing *Bowers Co.*

14

*v. London Assurance Corp.*, 90 Pa. Super. 121, 125 (1926)). The *McAllister* court noted that Pennsylvania Superior Courts had continued to follow the "joint obligation" approach, finding that whether a coinsured would be denied coverage "depends on whether the interests of the co-insureds are joint or severable . . . . as expressed in the insurance policy[.]" *Id*. at 1287 (citing *Maravich v. Aetna Life & Cas. Co*., 504 A.2d 896, 902-03 (Pa. Super. Ct. 1985)). Critically, the court drew a distinction between precedent that dealt with policies barring coverage due to the act of "the insured" from the policy before it which utilized the term "any insured." *Id*. It observed that the Third Circuit had concluded that, under Pennsylvania law, a policy which purported to exclude coverage for the dishonest act of "any insured" was unambiguous and "could not have been any clearer," but that the "outcome may have been different had the exclusion used the term 'the insured' instead of 'any insured.'" *Id*. (citing *Spezialetti*, 759 F.2d at 1141-42).

Guided by this precedent, the *McAllister* court found that "[t]he use of the terms 'any' and 'an' in the exclusions clearly indicate that the insureds' obligations under the policy's neglect and intentional provisions are joint, not several" and that the intentional act of one insured bars coverage to an innocent coinsured under such an exclusion. *Id*. at 1289. Relying on this decision, Pennsylvania federal courts sitting in diversity have construed similar exclusions accordingly, adhering to the majority view. *See Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 461 (M.D. Pa. 2007) ("Pennsylvania law is clear that the use of the term 'any insured' in these exclusions, rather than 'the insured,' bars coverage for innocent co-insureds."); *Stahley*, 239 F. Supp. 3d at

15

874 ("[T]he Court concludes that the Pennsylvania Supreme Court would interpret a provision applying to 'an insured' as having the same exclusionary effect as a provision referring to 'any insured.' Accordingly, the intentional act exclusion in the Policy bars coverage of [the insured due to acts by coinsured]."); *Strouss v. Fireman's Fund Ins. Co.*, No. CIV.A. 03-5718, 2005 WL 418036, at *4 (E.D. Pa. Feb. 22, 2005) (stating that under Pennsylvania law "[i]t is equally well-settled that where an intentional injury exclusion applies by its terms to 'any insured' . . . an innocent insured is precluded from recovering losses related to contractually proscribed conduct by a co-insured."); *Ferrino v. Pac. Indem. Co.*, No. CIV. A. 95-102, 1996 WL 32146, at *3 (E.D. Pa. Jan. 24, 1996) ("*McAllister*; *Spezialetti v. Pacific Indemnity Ins. Co., []*; and *Atlantic Mut. Ins. Co. v. Central Capital Leasing Corp., []* all hold that policy language referring to 'any insured' or similar language is unambiguous and indicates that the insureds' obligations and interests are joint.") (footnote omitted)); *Atl. Mut. Ins. Co. v. Ctr. Cap. Corp.*, No. CIV. A. 91-4636, 1992 WL 97823, at *4 (E.D. Pa. May 5, 1992), *aff'd*, 983 F.2d 1049 (3d Cir. 1992) ("[T]his court concludes that the language of the provision clearly evidences the intent to deny coverage in the event of the fraud of any insured.").

Respondents insist that the analysis of the language of intentional act exclusions is not germane to ELEs but fail to articulate why Pennsylvania courts' analysis of precisely the same operative phrases and language is not instructive in ascertaining how a Pennsylvania court would rule on the issue at hand. In fact, federal courts obliged to

apply Pennsylvania law have expressly relied upon this precedent and utilized the same analysis when confronted with ELEs.

Most recently, in *Westminster American* the United States District Court for the Eastern District of Pennsylvania found that an ELE precluded coverage for an employee's claim against a non-employer property owner and contractor that were additional insureds under a commercial general liability policy. 555 F. Supp. 3d at 75. Like the policy in this case, the Westminster policy excluded coverage for claims by an employee of "'any insured arising out of and in the course of[] . . . [e]mployment by any insured'" and noted that the ELE applied "'[w]hether an insured may be liable as an employer or in any other capacity.'" *Id*. at 84. The District Court found that "'[u]nder Pennsylvania law, "[an] employee injury exclusion provision applie[s] to additional insureds seeking coverage under the policy, and not just to the primary purchaser of the policy."'" *Id*. (quoting *Brown & Root Braun, Inc. v. Bogan Inc*., 54 F. App'x 542, 546 (3d Cir. 2002)); *accord Szeles Real Est. Dev. Co., L. P. v. Hartford Cas. Ins. Co.*, No. CIV. A. 12-7145, 2013 WL 3865104, at *3 (E.D. Pa. July 25, 2013) ("The Policy's employee injury exclusion provision thus bars coverage for claims brought by Berkshire employees against Berkshire, as the named insured, and also applies with equal force to claims brought by Berkshire employees against [non-employer] Szeles, as an additional insured."); *Arcelormittal Plate, LLC v. Joule Tech. Servs., Inc*., 558 F. App'x 205, 211 (3d Cir. 2014) ("The long-standing rule under Pennsylvania law, by contrast, is that an employee exclusion in a CGL policy generally *does* bar coverage for claims against one insured by a

17

different insured's employee."); *Markel Ins.,* 2012 WL 2135564, at \*5 (citing *Pa. Mfrs. Ass'n Ins. Co. v. Aetna Cas. and Sur. Ins. Co.*, 233 A.2d 548, 550-51 (Pa. 1967) ("An employer liability exclusion clause precludes coverage for an injury suffered by an employee of *any* named insured, regardless of whether the employee works for the named insured seeking coverage."); *Brown & Root Braun,* 54 F. App'x at 546 ("The Pennsylvania Supreme Court squarely rejected Aetna's position that the employee injury exclusion provision in the policy . . . operated to exclude coverage for employees only when those employees are employed by the insured seeking coverage[.]").

Therefore, we readily conclude that courts obliged to apply Pennsylvania law have consistently aligned Pennsylvania with the majority viewpoint that where an exclusion references "any insured," the language is read more broadly than "the insured" and is to be applied according its plain and ordinary meaning.

C.     THE "SEPARATION OF INSUREDS" PROVISION

As previously indicated, both the circuit court and respondents focus less on the wording of the exclusion itself than the effect of the "Separation of Insureds" provision on that wording. They contend that the "Separation of Insureds" provision renders any other insureds under the policy conceptually non-existent and requires the ELE to be viewed solely through the lens of the insured seeking coverage. Following this argument, to the extent the insured seeking coverage is not the employer and all other potential

18

employer-insureds "do not exist," the ELE retains no applicability.[8]  Respondents are

dismissive of the foregoing caselaw, arguing that either the policies did not contain, or the

decisions failed to discuss the impact of, a "Separation of Insureds" provision, among other

contextual distinctions.  While Neice argues that the "Separation of Insureds" provision

clearly modifies the scope of the ELE, Dana Mining argues that "[a]t the very least" it

renders the ELE ambiguous.[9]  We find that a Pennsylvania court would disagree on both

counts.

---

[8] We note that the bulk of Neice's brief is fundamentally dependent upon the Court's indulgence of a paradigm of sorts that places the various insureds under the subject policy into categories which she contends clarifies the application of the ELE, i.e. first named insureds, named insureds, "relational" insureds, and "non-insureds."  This scheme ostensibly suggests an operable distinction between *types* of "insureds" that is not entirely based in the policy language.  Moreover, we find no indication in the subject policy or pertinent authority that permits us to engage in the fiction that various types of "insureds" under the policy "move" from one category to another or otherwise "cease to exist" for purposes of the issue at hand—another fundamental precept of Neice's argument.

More importantly, the underlying principle of this paradigm appears to be that the existence of a "Separation of Insureds" provision predominates the application of the ELE irrespective of the language of the ELE itself.  For the reasons discussed herein, we disagree.

[9] Dana Mining further argues that the circuit court's construction of the ELE is both consistent with the "purpose" of the ELE and the "parties' expectations."  However, the parties offer no record evidence regarding how any of the parties "intended" the various coverages to operate and, more importantly, in Pennsylvania, "reasonable expectations" arguments typically extend only to consumers, not commercial entities.  *See Madison Const. Co. v. Harleysville Mut. Ins. Co*., 735 A.2d 100, 109 n.8 (Pa. 1999) (noting that extending reasonable expectations argument to commercial entities would "entail a substantial expansion" of the doctrine). Further, "an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *McAllister*, 640 A.2d at 1288.

As indicated, the "Separation of Insureds" provision in this case provides that the insurance applies "as if each named **insured** were the only named **insured**[.]" Mimicking language from *Politsopoulos I*, the circuit court explained that this provision creates a fictitious scenario where other named insureds cease to exist and therefore "cannot employ anyone."

There is a small minority of courts that have adopted a similar view of ELEs. The argument is typically presented in one of two ways:

> [T]hese courts find either that a severability clause unambiguously modifies the entirety of a policy, including its coverage and exclusion provisions, as if the insured claiming coverage was the only insured; or, then again, that the existence of the severability clause renders an exclusion applicable to "any insured" ambiguous, which requires a construction in favor of coverage

*Strouss*, 2005 WL 418036, at *5; *see also Nautilus Ins.*, 725 F. Supp. 2d at 1229 ("Under the minority [view], the two phrases are treated indistinguishably—that is, like 'the insured,' 'any insured' is interpreted as if it encompasses only the particular insured seeking coverage.").

However, this reasoning has been soundly rejected by a majority of courts and dismissed by one commentator as "not justifiable."[10] At best, the "Separation of

---

[10] As the commentator explained:

(continued . . .)

Insureds" provision has largely been found to alter or create ambiguities in exclusionary language only when it refers to "the insured." *See Maxey*, 110 S.W.3d at 214 ("If the exclusion clause uses the term 'the insured,' application of the separation of insureds clause requires that the term be interpreted as referring only to the insured against whom a claim is being made under the policy. If, however, the exclusion clause uses the term 'any insured,' then application of the separation of insureds clause has no effect on the exclusion clause; a claim made against any insured is excluded." (citations omitted)); *Politsopoulos II,* 115 A.3d at 854 (finding ELE's reference to "the insured" ambiguous when viewed in light of "Separation of Insureds" provision). The reason for this application of the "Separation of Insureds" provision traces back to the genesis of the provision itself.

As discussed by several courts, the "Separation of Insureds" provision was designed specifically to clarify the meaning and application of policies which utilized "the insured" and ensure that "the insured" was read as meaning "the insured seeking coverage." As explained by the United States District Court of Hawaii:

> [I]t has been held that an "any insured" exclusion will be treated like a "the insured" exclusion if the policy contains a severability clause; that is, a provision stating that the "insurance applies separately to each insured." Such a holding is not justifiable. A severability clause provides that each insured will be treated independently under the policy. The fact remains, however, that as applied even independently to each insured, an "any insured" exclusion unambiguously eliminates coverage for each and every insured.

Windt, *supra* note 7, § 11.8 (footnotes omitted).

21

Prior to 1955, courts interpreted exclusions concerning "the insured" to preclude coverage for *any* insured—a result contrary to the intentions of the insurance companies. In 1955, to resolve the confusion and clarify that 'the insured' is to be applied separately to each individual insured, the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau adopted the separation of insureds clause, then titled the severability of interests clause. The history of the separation of insureds clause shows that "the term 'the insured' means, and means *only*, the person *claiming coverage*, or (to put it another way) only the person coverage for whom is at issue."

*Nautilus Ins.*, 725 F. Supp. 2d at 1229-30 (citations omitted). As a result, "[t]he history of the separation of insureds clause . . . 'makes clear that the "separation of insureds" clause only affects exclusionary clauses referring to "the insured," and not "any insured.""" *Id.*; *see Ohio Cas. Ins. Co. v. Holcim (US), Inc.,* 744 F. Supp. 2d 1251, 1271 (S.D. Ala. 2010) ("When such clauses (which are also known as severability clauses) became standard in liability insurance policies more than a half century ago, the insurance industry's purpose and intent was to clarify 'that the term "the insured" in an exclusion refers merely to the insured claiming coverage.'"); *see also Universal Ins. Co. v. Burton Farm Dev. Co., LLC*, 718 S.E.2d 665, 670 (N. C. Ct. App. 2011) ("Since the exclusion refers to *the* insured rather than *any* insured, the separation of insureds clause requires that the exclusion be applied separately with respect to each insured."). Therefore, in light of the creation of the "Separation of Insureds" provision, the term "any insured" took on a comparatively broader import: "After companies began including the separation of insureds clause, the 'majority of reported decisions' interpreted exclusions applicable to 'any insured' to permit insurers

to deny coverage to an insured when another employer's employee sued for injuries." *J&J Holdings*, 420 F. Supp. at 1012.

Although not binding on our decision, this Court has made the same observation. *See Clendenen*, 238 W. Va. at 263, 793 S.E.2d at 913 (agreeing that "[t]he majority of courts across the country addressing the impact of severability clauses on exclusionary language utilizing 'an insured' or 'any insured' have concluded that the severability clause has no bearing on the application of the exclusionary language."); *see also J & J Holdings*, 420 F. Supp. 3d at 1011-12 ("[M]any other states follow the rule that 'the use of "any" clearly conveys that the excluded activity of one insured will bar coverage for all others, regardless of a severability clause.' Indeed, this approach represents the majority view." (citations omitted)); *Am. Fam. Mut. Ins. Co. v. White*, 65 P.3d 449, 456 (Ariz. Ct. App. 2003) ("Most courts that have construed the phrase 'any insured' in an exclusion have found that it bars coverage for any claim attributable to the excludable acts of any insured, even if the policy contains a severability clause." (footnote omitted)).

Most importantly, we find that Pennsylvania courts—and courts bound to apply Pennsylvania law—have aligned themselves with this majority position. *See McAllister*, 640 A.2d at 1289 ("*Notwithstanding the provision which defines each named insured as a 'separate insured' under the policy*, the policy specifically provides that Millville will not pay for loss resulting from neglect by 'any insured' or from the intentional acts of 'an insured.'") (emphasis added)); *Stahley*, 239 F. Supp. 3d at 875 ("A severability

23

clause . . . does not modify a policy's exclusion when the exclusion provision applies to 'any insured[]' . . . . [and] does not override the clear and unambiguous language of the intentional act exclusion[.]"); *Markel Ins.*, 2012 WL 2135564, at *6 ("A severability clause in an insurance contract does not change the meaning of the word 'insured' in the employer liability exclusion clause to 'insured being sued.'"); *Neff ex rel. Landauer v. Alterra Healthcare Corp.,* 271 F. App'x 224, 226 (3d Cir. 2008) (rejecting invocation of "Separation of Insureds" provision to create ambiguity and stating "[t]he abuse or molestation does not have to have been committed by 'the insured' or even 'an insured,' but by 'anyone.' Invoking the separation of insureds provision does not narrow the broad reach of the exclusion."); *Brown & Root Braun*, 54 F. App'x at 548 ("We conclude that the severability clause does not exclude [the non-employer insured seeking coverage] from the employee injury exclusion provision."). *Cf. Strouss*, 2005 WL 418036, at *6 ("[T]his Court is not convinced that the Pennsylvania Supreme Court would overrule *McAllister* and find that the severability clause renders the 'one or more insured' language in the instant policy 'ambiguous' as a matter of law.") (footnote omitted)).

While Neice and Dana Mining insist that failure to apply the "Separation of Insureds" provision in this manner renders it meaningless, many courts have found just the opposite—that using the "Separation of Insureds" provision to make "*any* insured" read as "the insured seeking coverage" would "render the 'any' or 'anyone' language in the applicable provisions superfluous[.]" *Clendenen*, 238 W. Va. at 267, 793 S.E.2d at 917; *see also Pa. Mfrs' Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 233 A.2d 548, 551 (Pa.

24

1967) ("Neither the court below nor this court is reading the Severability of Interests clause out of the policy. What we are doing is interpreting the unambiguous language of the contract.").[11] As Federal correctly notes, the subject policy utilizes the term "the insured" in two of its other exclusionary provisions—the "Expected or Intended Injury" exclusion and "Crime or Fraud Exclusion."—which the "Separation of Insureds" provision could potentially impact pursuant to *Politsopoulos II*. *See, e.g., Am. Fam. Mut. Ins. Co. v. Wheeler,* 842 N.W.2d 100, 107 (Neb. 2014) ("[W]e do not agree with the . . . argument that the majority position renders the severability clause meaningless. First, the severability clause affects the interpretation of exclusions referencing 'the insured.' There are such exclusions in these policies, such as the 'Illegal Consumption of Alcohol' exclusion.").

The foregoing notwithstanding, the circuit court—and respondents—insist that the Pennsylvania Superior Court case of *Politsopoulos I* is "almost completely analogous" and mandates a contrary interpretation of the ELE in the instant case. However,

---

[11] *See Vivify Constr., LLC v. Nautilus Ins. Co.*, 94 N.E.3d 281, 288 (Ill. App. Ct. 2017) ("Furthermore, our interpretation does not render the separation of insureds provision meaningless, as that provision must still be applied to the policy's other exclusions."); *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748, 752 (Colo. 1990) ("We find the reasoning of the majority of courts more persuasive . . . because it considers and gives effect to all the policy provisions and recognizes that an insurance policy is a contract between the parties which should be enforced in a manner consistent with the intentions expressed therein." (footnote omitted)). *Cf. Maxey*, 110 S.W.3d at 214 ("[C]onstruing the term 'any' the same as the word 'the' in an exclusion clause when an insurance policy contains a separation of insureds or severability of interests clause would require a tortured reading of the terms of the policy.").

we find that reliance on *Politsopoulos I* to render the ELE at bar inapplicable reflects a gross misunderstanding of the significance of both the policy language and the issue presented as a whole—as demonstrated by the Pennsylvania Supreme Court's analysis in *Politsopoulos II*.

In *Politsopoulos I*, the plaintiff/employee of a property lessee filed a negligence action against the lessor/owner under a premises liability theory. The insurer denied coverage on the basis of an ELE that excluded coverage for claims by "[a]n 'employee' of *the* insured arising out of and in the course of[] . . . [e]mployment by *the* insured[.]" 75 A.3d at 530 n.2 (emphasis added). The trial court found that because the coinsured lessor/owner was *an* insured under the policy, it qualified as "*the* insured" for purposes of triggering the ELE even though it was not the plaintiff's actual employer. *Id*. at 532-33.

On appeal, the Superior Court reversed, finding that the "Separation of Insureds" provision required it to read the ELE as though the insured seeking coverage was the only insured under the policy. *Id*. at 537. The *Politsopoulos I* court reasoned:

> There is no dispute that [the employer/lessors] are insureds under the Umbrella Policy. However, the Umbrella Policy directs us to treat each insured as though no other insured exists. An insured who does not exist cannot employ anyone. Thus, if the person injured is not employed by the lone insured as to whom coverage is to be tested, the Employers' Exclusion simply does not come into play.

*Id*. As previously indicated, the circuit court below borrowed this analysis and language nearly verbatim to find the ELE at issue inapplicable.

However, the circuit court failed to recognize that, on appeal of this ruling, the Pennsylvania Supreme Court thoroughly explained why the policy language at issue in that case yielded such a result and expressly contrasted it with the type of exclusionary language used in the case at bar. In *Politsopoulos II*, the Court found that because the ELE used the phrase "*the* insured," it was ambiguous, particularly when construed with the "Separation of Insureds" provision. 115 A.3d at 854 (emphasis added). By way of footnote, however, it expressly distinguished the policy language at issue with exclusions which used the term "any insured": "[I]n terms of 'any insured' exclusions, the main controversy appears to center, not on whether the term unambiguously implicates any or all insureds, but upon whether such meaning should be narrowed to the insured against whom a claim is asserted in light of a separation-of-insureds clause." *Id*. at 851 n.5. The Court then acknowledged that, as pertains to "any insured," "[t]he great majority of courts . . . merely apply the rule that a separation-of-insureds clause does not negate the effect of a plainly worded exclusion." *Id*.

This explicit carve out of "any insured" exclusionary provisions from its analysis notwithstanding, the *Politsopoulos II* discussion is instructive on Pennsylvania's likely treatment of the term "any insured" in an ELE. First, the *Politsopoulos II* court emphasized that, as to an ELE, "the appropriate focus here is less upon the specific wording

27

of the separation-of-insureds clause than on the terms of the employer's liability exclusion." *Id*. at 851. Consistent with its characterization of "any insured" exclusions, the Court then expressly rejected the notion that the "Separation of Insureds" provision *alone* can undermine *unambiguous* exclusions: "[N]either a separation-of-insureds clause nor its analogue, a severability-of-interests provision, is to be interpreted in a manner which would subvert otherwise clear and unambiguous policy exclusions." *Id*. at 850.[12]

Secondly—and contrary to respondents' contention that the distinction between "the insured" and "any insured" is immaterial—the *Politsopoulos II* court found the ELE in that case ambiguous specifically *because* it utilized the phrase "the insured" rather than "any insured":

> [W]e are persuaded that, at least where a commercial general liability policy makes varied use of the definite and indefinite articles, this, as a general rule, creates an ambiguity *relative to the former*, such that "the insured" may be reasonably taken as signifying the particular insured against whom a claim is asserted.

*Id*. at 853 (emphasis added). Finding that the "Separation of Insureds" provision merely "reinforce[d]" this ambiguity, the Court cited authority which differentiated policies that use the term "any insured": "'If the exclusion is written to apply to an employee of *the* insured, *as opposed to any insured*, . . . the exclusion should not apply to a claim against

---

[12] With this statement, the Pennsylvania Supreme Court implicitly rejected respondents' contention in the instant case that the "Separation of Insureds" provision in the ELE at issue is "more robust" than other such provisions and therefore yields a different result. *See infra* n.14.

28

an insured entity that is not the employer.'" *Id*. (quoting Windt, *supra* note 7, § 11.14) (emphasis added) (footnote omitted).[13] Further, the Court acknowledged "'the distinction that surfaces time and again in the case law'" between "the insured" and "any insured" and cited approvingly the conclusion that "'separation of insureds clauses affect interpretation of policy exclusions using the term "the insured" (essentially modifying that term to mean "the insured claiming coverage"), *but have no effect on the interpretation of exclusions using the term "an insured" or "any insured."*'" *Id*. (quoting *Holcim*, 744 F. Supp. 2d at 1271 (emphasis added)).

Therefore, not only does the *Politsopoulos* case involve meaningfully different policy language, but the Pennsylvania Supreme Court examined and cited numerous authorities which embody Federal's position in this matter: that "any insured" is to be literally construed and that the "Separation of Insureds" provision does not alter the scope of an exclusion using that term.[14] Consistent with that approach, and although

---

[13] In fact, even the *Politsopoulos I* court noted that "[t]he parties certainly could have fashioned the Umbrella Policy to effectuate the result for which Insurer argues[]"— presumably through the use of the phrase "any insured." 75 A.3d at 537; *accord Travelers Indem. Co. v. Bloomington Steel & Supply Co*., 718 N.W.2d 888, 895 (Minn. 2006) ("The language of the Travelers' policies excludes coverage for bodily injury expected or intended from the standpoint of 'the insured.' Travelers could have made clear that it was not insuring Bloomington Steel for the risk of an intentional act [by] . . . exclud[ing] coverage for bodily injury expected or intended from the standpoint of *'an'* or *'any'* insured." (footnote omitted)).

[14] Respondents attempt to capitalize on the fact that the insured in *Politsopoulos* was merely an insured by definition and not a named insured to argue that because Dana Mining *is* a named insured, we are "able to do what the [] Court in *Politsopoulos* could not[.]" (continued . . .)

bound by Pennsylvania law, we are mindful that this Court has likewise observed that "[t]he purpose of severability clauses is to spread protection, to the limits of coverage, among all of the insureds. *The purpose is not to negate unambiguous exclusions*." *Clendenen,* 238 W. Va. at 268, 793 S.E.2d at 918 (emphasis added); *see also Holcim*, 744 F. Supp. 2d at 1272 (recognizing that "courts from many jurisdictions have emphasized that a separation of insureds provision is not designed to, and does not have the effect of, negating plainly-worded exclusions.").

Nor do we find that the "Separation of Insureds" provision creates an ambiguity with respect to the ELE. "[C]ourts must not 'distort the meaning of the language

---

Respondents appear to be arguing that because the "Separation of Insureds" provision requires the policy to be read "as if each named insured were the only named insured," it has a greater applicability to the ELE as to Dana Mining, a named insured. Again, however, respondents' focus is misplaced. As cited above, *Politsopoulos II* explains that as to the impact of a "Separation of Insureds" provision, the "appropriate focus" is not on the wording of the provision, but rather the wording of the *exclusion* to which it is applied, expressly counseling against preoccupation with "modest variations" in such provisions. 115 A.3d at 851.

Similarly, respondents insist that cases dealing with "severability" clauses are distinguishable from cases addressing "Separation of Insureds" provisions. Dana Mining even goes so far as to contend that the Pennsylvania Supreme Court observes such a distinction, claiming that *Politsopoulos II* stands for the proposition that the latter is "'clearer and stronger'" than the former. However, the Pennsylvania Supreme Court was merely quoting the Superior Court's finding to that effect and promptly disabused it, referring to them collectively in its analysis: "As a general rule, neither a separation-of-insureds clause *nor its analogue, a severability-of-interests provision,* is to be interpreted in a manner which would subvert otherwise clear and unambiguous policy exclusions." *Politsopoulos II,* 115 A.3d at 850 (emphasis added). Therefore, for purposes of evaluating these provisions' impact on exclusionary language, we note that most courts address them jointly and/or interchangeably, including the Pennsylvania Supreme Court.

30

or resort to a strained contrivance in order to find an ambiguity,' and must give effect to a contract's clear and unambiguous terms." *Great Lakes Ins.*, 2021 WL 4399677, at *3 (citing *Madison Constr. Co.*, 735 A.2d at 106). In fact, in the absence of Pennsylvania authority finding ambiguity as to these specific provisions, we would be hard-pressed to suddenly find them unclear where we have previously declined to do so in nearly identical circumstances: "[W]e conclude that with respect to the two insurance policies at issue in this case, the severability clause's command to apply the insurance separately to each insured does not alter the intentional/criminal act exclusions' plain meaning or create ambiguity in its application." *Clendenen*, 238 W. Va. at 267-68, 793 S.E.2d at 917-18; *see also Sayre ex rel. Est. of Culp v. State Farm Fire & Cas. Co.*, No. 11-0962, 2012 WL 3079148, at *2 (W. Va. May 25, 2012) (memorandum decision) (rejecting argument that "the severability clause[] creates an ambiguity which defeats the family exclusion[]").

In sum, respondents would have this Court disregard the litany of decisions from Pennsylvania courts and courts bound to apply Pennsylvania law on this issue and align it with the minority view—all on the basis of a single Superior Court case that construed meaningfully different policy language, which was distinguished on that basis by the state's highest court on appeal. And while we are cognizant of the general proposition that ELEs are theoretically intended to avoid duplication of workers' compensation coverage, we cannot disregard the broad reach of the language of this particular ELE or the ample body of Pennsylvania caselaw construing similar language and exclusions as written. Respondents offer this Court essentially no authority upon which

31

we could conclude a Pennsylvania court would find the ELE as crafted in this case inapplicable, even if we were to agree with their policy-based arguments or the minority viewpoint. We therefore conclude that the circuit court erred in finding the ELE inapplicable to Neice's action against Dana Mining. Under the language of the applicable ELE endorsement, we find that Neice's claim arises out of Mr. Neice's employment with "any insured," i.e., Mepco LLC, and the policy therefore excludes coverage for Neice's action against Dana Mining.

## IV. CONCLUSION

For the foregoing reasons, we reverse the March 4, 2020, and April 8, 2021, orders of the Circuit Court of Monongalia County and remand for further proceedings consistent with this opinion.

Reversed and remanded.